

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2004

# Yang v. Odom

Precedential or Non-Precedential: Precedential

Docket No. 03-2951

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Yang v. Odom" (2004). *2004 Decisions.* Paper 17.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/17

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Case No:  03-2951

_____

PEDRO YANG; CAROL JACKSON; PETER S.KELSCH,on
behalf of themselves and all persons similarly situated;
JASON THOMPSON; RAYMOND T. CRUMP,

v.

STEVEN A. ODOM; MARK GERGEL; HENSLEY E.
WEST; MARTIN D. KIDDER; STEPHEN J. CLEARMAN

(D.C. Civil No. 02-cv-05968)

JAMES BARBERIAN; JOSEPH KINOSIAN;
KAREN KINOSIAN

v.

STEVEN A. ODOM; MARK GERGEL; HENSLEY E.
WEST; MARTIN D. KIDDER; STEPHEN J. CLEARMAN

(D.C. Civil No. 03-cv-00725)


Jason Thompson and Raymond T. Crump,
                                    Appellants


On Appeal From The United States District Court
For The District Of New Jersey
(District Court No. 02-cv-05968)


District Court Judge:  The Honorable Joel A. Pisano


_____


Argued June 16, 2004
_____

Before: ALITO, SMITH, *Circuit Judges* and DUBOIS,
*District Judge*[*]


(Filed December 15, 2004)


Allyn Z. Lite, Esq.
Lite DePalma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, New Jersey 07102

_____

[*]Honorable Jan E. DuBois, Senior District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Robert M. Kornreich, Esq.
Carl L. Stine, Esq. (Argued)
Wolf Popper LLP
845 Third Avenue
New York, New York 10022

*Counsel for Appellants*

J. David Dantzler, Jr., Esq. (Argued)
J. Timothy Mast, Esq.
Thuy N. Vu, Esq.
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308


William B. McGuire, Esq.
Marianne M. DeMarco, Esq.
Tompkins, McGuire, Wachenfeld & Barry
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

*Counsel for Appellees*


_____

OPINION OF THE COURT
_____


3

SMITH, *Circuit Judge.*

Pedro Yang, Carol Jackson, and Peter Kelsch, one member of each of three would-be subclasses in this class action, on behalf of themselves and similarly situated individuals, appeal the District Court's refusal to toll the applicable statute of limitations during the pendency of a prior, substantively identical suit. Absent tolling, this second suit is time-barred.

The Northern District of Georgia denied class certification to all three subclasses in the earlier class action because it found the original lead plaintiffs, or the subclass itself, deficient under Rule 23 of the Federal Rules of Civil Procedure. In this suit, filed in the District of New Jersey, Plaintiffs argue that under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the statute of limitations should have been tolled during the pendency of the prior class action. The District Judge in New Jersey disagreed, concluding that *American Pipe* tolling is limited to intervenors – either as class representatives or as individuals – in the original suit, or to an individual plaintiff filing a new suit, but that it does not extend to the filing of a new class action. Because we can discern no principled basis for limiting the application of tolling in this way, we will affirm in part and reverse in part. We hold that *American Pipe* tolling applies to the filing of a new class action where certification was denied in the prior suit based on the lead plaintiffs' deficiencies as class representatives, but that

4

*American Pipe* tolling does not apply where certification was denied based on deficiencies in the purported class itself.

I.

On January 7, 1999, the first of 22 class action complaints against World Access, Inc. ("WAXS")[1] and certain of its former officers and directors[2] was filed in the United States District Court for the Northern District of Georgia. These actions were consolidated as *In re World Access, Inc. Securities Litigation*, 1:99-cv-43-ODE (N.D. Ga.).

The *In re World Access* Consolidated Amended Complaint included claims under Sections 11 and 15 of the

---

[1] On April 10, 2001, WAXS filed a notice of bankruptcy petition and automatic stay of proceedings. All litigation against WAXS itself, therefore, was suspended and the class action continued against only the individual defendants.

[2] The individual defendants in the action included the following persons who were WAXS officers and/or directors during the class period: Steven A. Odom, Chairman and Chief Executive Officer; Mark Gergel, Chief Financial Officer and an Executive Vice President; Hensley E. West, President, Chief Operating Officer and Director; Martin D. Kidder, Principal Accounting Officer, Controller, Secretary to the Board of Directors and a Vice President; and Stephen J. Clearman, a Director.

Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77(k) and 77(o), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. The complaint alleged that the defendants issued materially false and misleading statements and omitted from disclosure material information concerning the products, revenues, earnings, and inventory and sales practices of WAXS, and that the plaintiffs relied on the misstatements and omissions to their detriment. The complaint identified three distinct subclasses related to how each came into possession of WAXS stock during the class period: (1) the NACT merger class ("NACT"), (2) the Telco merger class ("Telco"), and (3) the Open Market class.

On July 21, 2000, the plaintiffs moved for class certification and for approval of lead plaintiffs. On March 29, 2001, the Northern District of Georgia appointed William B. Tanner, Cari Thompson, and John W. Brothers as the lead plaintiffs for the Open Market, NACT, and Telco classes, respectively. In that same order the court directed the lead plaintiffs to file a joint motion for class certification. The lead plaintiffs filed their renewed class certification motion on April 18, 2001. The defendants agreed to stipulate to class certification. However, on July 26, 2001, the Northern District of Georgia rejected the stipulation, finding that the parties had failed to make an appropriate showing that the requirements of

6

Rule 23 had been satisfied.

The lead plaintiffs renewed their motion for class certification on January 9, 2002, which the defendants did not oppose. On July 1, 2002, in an order addressing each of the subclasses in turn and citing deficiencies in each, the Northern District of Georgia denied the plaintiffs' renewed motion for class certification with prejudice. The plaintiffs' motions for reconsideration and for interlocutory Eleventh Circuit review were denied, and the action continued in the Northern District of Georgia on behalf of five individual plaintiffs.[3]

On December 17, 2002, Yang, Jackson, and Kelsch, one would-be member from each of the three subclasses of the purported class which was denied certification by the Northern District of Georgia, initiated this substantively identical class action in the District of New Jersey ("District Court") against the same defendants.[4] In their brief to this Court, Plaintiffs-

---

[3] During argument before this Court, Defendants' counsel reported that the Northern District of Georgia had granted summary judgment in the defendants' favor on the individual plaintiffs' claims. *See In re World Access*, *Inc. Secs. Litig.*, 310 F. Supp. 2d 1281 (N.D.Ga. 2004).

[4] The District Court consolidated the *Yang* action with one brought by James Baberian and Karen Kinosian, and appointed Jason Thompson and Raymond Crump as lead plaintiffs for the consolidated action.

Appellants, who were not parties to the earlier suit, explain that they filed this class action rather than intervene in their individual capacities in the then-pending action in the Northern District of Georgia, because "given the size of their losses, it was not economically feasible to prosecute the action on an individual basis." They further acknowledge that they did not seek to intervene as class representatives in the Georgia action "because the Eleventh Circuit (unlike the Third Circuit in *McKowan*, 295 F.3d 380) has refused to toll the statute of limitations [which] barred claims as untimely."

On March 13, 2003, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), arguing, *inter alia*, that this action is barred by the one-year statute of limitations for federal securities fraud claims imposed by 15 U.S.C. § 77m. On June 2, 2003, the District Court granted the motion to dismiss, ruling that the prior action did not toll the statute of limitations for future class actions, and thus use of the class action mechanism is time-barred. Crucial to its conclusion, the District Court reasoned that this Court's opinion in *McKowan Lowe v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002), "limits the breadth of the *American Pipe* tolling exception to subsequent claims filed by intervenors, and does not toll the statute of limitations for a new action filed in a different district court." *Yang v. Odom*, 265 F. Supp. 2d. 469, 474 (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)). Plaintiffs challenge this holding.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

This Court undertakes plenary review of the District Court's Rule 12(b)(6) dismissal on statute of limitations grounds. *See Lake v. Arnold*, 232 F.3d 360, 365 (3d Cir. 2000) ("This plenary review extends to the District Court's choice and interpretation of applicable tolling principles and its conclusion that the facts prevented a tolling of the statute of limitations"). A motion to dismiss pursuant to Rule 12(b)(6) is properly granted if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

III.

Claims arising under § 77k of the Securities Act are subject to a one-year statute of limitations period. 15 U.S.C. § 78m. This period begins to run either upon "discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." *Id.* The District Court found that the statutory period began to run on January 5, 1999, the date WAXS announced that its fourth

quarter earnings would fall significantly short of projections. The *Yang* plaintiffs do not challenge that finding on appeal and concede that absent tolling, the limitations period would have expired before they filed their complaint in the District Court.

Where tolling applies, it begins on January 7, 1999, the date that the first of the *In re World Access* suits was filed in the Northern District of Georgia. Defendants argue that "the limitations period began to run again on July 26, 2001, the date that the district court in Georgia first denied the plaintiffs' class certification motion." Under this argument, the statute of limitations would have expired on July 24, 2002, almost five months before the present complaint was filed in the District of New Jersey. Among other cases, Defendants cite *Crown, Cork, & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983), in support of this contention, but *Crown, Cork & Seal* goes no further than to state that tolling continues "until class certification is denied." *Id.* at 354.

This Circuit declared in *Edwards v. Boeing Vertol Co.*, 717 F.2d 761 (3d Cir. 1983), that, "[c]onsistency with the policies reiterated in *Crown, Cork & Seal* requires that the tolling of the statute of limitations continue until a final adverse determination of class claims." *Id.* at 766. *Edwards* concluded that such a final adverse determination in the prior case that tolled the statute of limitations had occurred only when the issue was decided on appeal. *Id.* at 765-66. That conclusion was based on the fact that the class had been certified and the issues

raised by the class had gone to trial. *Id*. at 766. Although the district court found against the class in its verdict, questions remained as to whether the district court should have dismissed the claims of all class members who were not parties when it ruled in favor of some of the individual named plaintiffs in the bifurcated trial. *Id.* at 765.

Here, there is no basis for extending applicable tolling through the pendency of the *In re World Access* appeal in the Eleventh Circuit. We do not agree with Defendants, however, that applicable tolling ended when the Northern District of Georgia first denied class certification. That initial denial was a rejection of the parties' proposed joint stipulation of a class definition, and as such was not the kind of "final adverse determination of class claims" required by *Edwards*. The July 26, 2001, order states only that "the parties have failed to make an appropriate showing that the requirements of Rule 23 have been satisfied as required by the United States Supreme Court." It does not identify the basis for the rejection or even the particular requirement(s) of Rule 23 that had not been satisfied.

Indeed, *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), the leading case cited by Defendants in arguing that tolling should not apply, would end tolling only upon a determination by the district court that provided "dispositive reasons indicating unequivocally that a class action suit was inappropriate." *Id.* at 877 (declining to apply tolling where "district court rendered a

11

definitive determination as to potential manageability problems and intraclass conflicts"). *American Pipe*, the seminal case on the issue of tolling statutes of limitations during the pendency of a class action, is not to the contrary; there the Supreme Court concluded that tolling continued only "during the pendency of the motion to strip the suit of its class action character." 414 U.S. at 561.

Here, a final adverse determination of class claims in *In re World Access*, and a resolution to the defendants' attempt to strip the suit of its class action character, did not occur until the Northern District of Georgia denied class certification with prejudice on July 1, 2002, and the applicable tolling period ended that day.

Only two days had elapsed between the start of the limitations period and the filing of the first *In re World Access* suit. Therefore, the *Yang* complaint, having been filed on December 17, 2002, (i.e., less than six months after the applicable tolling period ended), was timely to the extent that tolling applies.

IV.

A. *Class Action Tolling in the Supreme Court:* American Pipe *and* Crown, Cork & Seal

The Supreme Court announced in *American Pipe* that

12

at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.

414 U.S. at 552-53. In reaching that conclusion, the Court weighed the policies behind both statutes of limitations and the class action mechanism to determine that "[s]ince the imposition of a time bar would not in this circumstance promote the purposes of the statute of limitations, the tolling rule we establish here is consistent both with the procedures of Rule 23 and with the proper function of the limitations statute." *Id.* at 555. Statutory limitation periods serve

[t]he policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights, [and] are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the

13

form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*Id.* at 554-55 (internal citation and quotation omitted). To explain why tolling should apply while a class certification decision is pending, the Court reasoned that the alternative would

frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found 'superior to other available methods for the fair and efficient adjudication of the controversy.'

*Id.* at 551 (quoting Fed. R. Civ. P. 23(b)(3)).

The Supreme Court later explained that the *American Pipe* holding extends to "all asserted members of the class, not just as to intervenors." *Crown, Cork & Seal*, 462 U.S. at 350 (internal citation and quotation omitted). The Court based its decision to extend *American Pipe* to individual suits on its conclusion that "[m]uch the same inefficiencies would ensue if *American Pipe*'s tolling rule were limited to permitting putative class members to intervene after the denial of class

14

certification." *Id.*

Pertinent to the issue before us, the Court observed that because the filing of a class complaint puts a defendant on notice "of the need to preserve evidence and witnesses respecting the claims of all the members of the class[,] . . . [t]olling the statute of limitations thus creates no potential for unfair surprise, *regardless of the method class members choose to enforce their rights upon denial of class certification.*" *Id.* at 353 (emphasis added). Here, we are asked to determine the extent to which the suits contemplated in *Crown, Cork & Seal* – i.e., those brought by individuals following a denial of class certification – can be aggregated in a subsequent substantively identical class action.

*B. Tolling and Sequential Class Actions in the Courts of Appeal*

In *McKowan*, this Court held that *American Pipe* tolling applies to an intervenor as a proposed lead plaintiff in a later class action where the district court had, in a prior class action, declined "to certify a class for reasons unrelated to the appropriateness of the substantive claims for certification." 295 F.3d at 389.[5]   In *McKowan*, although the original class suit

---

[5] *McKowan* built on *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir. 1975), where this Court held that "the broad tolling principle" enunciated in *American Pipe* should apply to a replacement lead plaintiff where the district court determined

15

satisfied the commonality and numerosity requirements of Rule 23, the district court rejected the motion for class certification because the putative lead plaintiff failed to satisfy the requirements of typicality and adequacy. We stressed that the intervening class representative in *McKowan* was not "attempting to resuscitate a class that a court [had] held to be inappropriate as a class action," and that the class certification motion had not been "rejected because of any defects in the class itself but because of [the lead plaintiff's] deficiencies as a class representative." *Id*. at 386. Indeed, this Court stated that "we see no good reason why class claims should not be tolled where the district court had not yet reached the issue of the validity of the class." *Id.* at 389.

Plaintiffs here argue that the District Court improperly limited *McKowan* to its specific facts. According to Plaintiffs, the *McKowan* rationale should apply equally to the filing of a new class action with different class representatives. Defendants counter that neither *American Pipe* nor *Crown, Cork & Seal* supports the extension of the tolling doctrine to class claims in a new action filed in a different court. Thus, Defendants urge this Court to cabin *McKowan*'s application of tolling to purported class members as intervenor class representatives in the same class suit, and to refuse to extend the reasoning of *McKowan* to purported class members' pursuit of

after certification of a class that the original lead plaintiff did not have standing to sue on behalf of the class. *Id.* at 1097.

a new class action in a different forum. Because we can discern no principled basis for the line-drawing Defendants suggest, we hold instead that *American Pipe* tolling applies to would-be class members who file a class action following the denial of class certification due to Rule 23 deficiencies of the class representative. *American Pipe* tolling will not apply to sequential class actions where the earlier denial of certification was based on a Rule 23 defect in the class itself.

Defendants rely upon a line of cases from other courts of appeal, typified by the Second Circuit's *Korwek* decision, to argue that this Court should limit the rule announced in *McKowan*. As we stated in *McKowan*, this Court agrees with the *Korwek* line of cases insofar as they refuse to toll limitations periods for substantively identical class actions in which the earlier putative class was denied certification because the substantive claims were inappropriate for class treatment. Our review of the case law of the Circuits which have addressed the issue reveals them to be unanimous on this point. No Circuit allows plaintiffs the benefit of *American Pipe* tolling to sequentially relitigate a denial of class certification based on a Rule 23 deficiency in the class itself.

In tolling limitations periods for subsequently filed class actions where the sole basis for the earlier denial of certification was the deficiency of the lead plaintiff as class representative, we inevitably break from some Circuits' treatment of the issue, for the decisions are mixed. The Circuits have taken three

17

approaches: (1) the majority of Circuits have not tolled limitations where the earlier class was denied certification because of a deficiency in the class itself, but have not addressed the distinction at issue here; (2) the Eleventh Circuit bars tolling for all sequential class actions; and (3) supportive of this Court's approach, the Ninth Circuit has recently allowed plaintiffs to aggregate their claims in a second class action if their individual claims would be timely using *American Pipe* tolling; the case involved a class which had been certified before enactment of a statute abrogated the certification, but the rationale of the Ninth Circuit's holding potentially extends to all sequential class actions.

Illustrative of the first approach, the Second Circuit in *Korwek* held that tolling did not apply "to permit the filing by putative class members of a subsequent class action nearly identical in scope to the original class action which was denied certification." *Id.* at 876. Contrary to the broad scope of certification requested by the plaintiff, the district court in the original class suit, citing problems of manageability and intraclass conflict, decided to "limit drastically the scope of the class certified" to be coextensive with the lead plaintiff's trading behavior in the silver futures market. *Id.* Purported members of the class excluded by the narrowed scope then filed a new class action requesting certification of a class identical in scope to the broad request rejected in the original suit. *Id.* at 876. The Second Circuit rightly declined to toll the statutory period in these circumstances, as the district court had found that the

broad class requested would be unwieldy and unmanageable regardless of the class representative. Indeed, the Second Circuit did not foreclose tolling the limitations period for subsequent class actions asserting an appropriate scope. *Id.* ("This Court notes that it leaves for another day the question whether the filing of a potentially proper subclass would be entitled to tolling under *American Pipe*.").

In taking this approach, *Korwek* followed the Fifth Circuit's decision in *Salazar-Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334 (5th Cir. 1985), which found that "*American Pipe* tolling does not apply to permit putative class members to file a subsequent class action." *Korwek*, 827 F.2d at 877-78. Significantly, in *Salazar-Calderon* the putative class had been denied certification in the first action because of defects in the purported class itself. The Fifth Circuit noted that common questions of law and fact did not predominate among the putative class members and that "a class action was not necessarily the superior method for handling the controversy." *Salazar-Calderon*, 765 F.2d at 1350. Similarly, in the leading First Circuit case which followed *Korwek* and *Salazar-Calderon*, the refusal to allow tolling in sequential class actions was in the context of a district court having based its earlier denial of class certification on deficiencies in the class itself. *See Basch v. Ground Round, Inc.*, 199 F.3d 6, 8 n.4 (1st Cir. 1998) (class members not "similarly situated" due to many factual differences between them); *see also Andrews v. Orr*, 851 F. 2d 146, 149 (6th Cir. 1988) (applying *Korwek* and *Salazar-*

19

*Calderon* without noting the reason for the district court's denial of class certification).

The second approach, which only the Eleventh Circuit has taken, reads *Korwek* broadly to deny tolling to all sequential plaintiffs invoking the class action device, regardless of the reason class certification was denied in the earlier suit. In *Griffin v. Singletary,* 17 F.3d 356 (11th Cir. 1994), which involved a district court's denial of class certification for lack of a proper representative, the Eleventh Circuit cited *Andrews, Korwek, Salazar-Calderon*, and *Robbin v. Flour,* 835 F.2d 213 (9th Cir. 1987), for the proposition that at that time all Circuit courts agreed that a pending class action does not toll the limitations period for later class actions brought by putative members of the class denied certification earlier. *Griffin*, 17 F.3d at 359.[6] The Eleventh Circuit continued, "The plaintiffs may not 'piggyback one class action onto another,' *Salazar-Calderon*, 765 F.2d at 1351, and thereby engage in endless rounds of litigation in the district court and in this Court over the adequacy of successive named plaintiffs to serve as class representatives." *Griffin,* 17 F.3d at 359.

As this Court stated in *McKowan*, "The *Griffin* Court

---

[6] As noted previously, *Griffin* has special significance here because its precedential force within the Eleventh Circuit is precisely what Yang, Jackson, and Kelsh sought to avoid by not filing this action in the Northern District of Georgia.

does not appear to have distinguished between the *Korwek* line of cases where denial of tolling followed a decision rejecting the class action itself and the situation where no court has yet determined that the class action is inappropriate." *McKowan*, 295 F.3d at 388. While *Griffin's* denial of tolling for all sequential class action plaintiffs has the virtue of clarity and ease of application, it is also characterized by a rigidity which we reject for at least three reasons. First, by its terms, *Korwek* invited refinement, and *Griffin* in effect bootstrapped *Korwek's* limited holding to be a blanket prohibition on sequential class actions. Moreover, it did so without analysis. Second, as discussed below, to the degree *Griffin* relied on *Robbin*, that foundation has eroded because the Ninth Circuit has since held that at least in certain circumstances, individuals whose claims were tolled by an earlier class action can aggregate their claims in a subsequent class suit. *Catholic Social Servs., Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000) (en banc). Third,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods. v. Winter,* 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Given that *American Pipe* tolling would unquestionably

21

apply were the plaintiffs here to bring individual actions, it would be at odds with the policy undergirding the class action device, as stated by the Supreme Court, to deny plaintiffs the benefit of tolling, and thus the class action mechanism, when no defect in the class itself has been shown.

The Ninth Circuit has taken the third approach. In *Robbin*, the prior class action was denied certification because the class as defined lacked commonality and because the lead plaintiff was not typical of the class in that he was vulnerable to additional defenses. *See Robbin*, 835 F.2d at 214; *Schlesinger Inv. P'ship v. Fluor Corp.*, No. 81 Civ. 2852, 1983 U.S. Dist. LEXIS 15329, at *18, (S.D.N.Y. July 14, 1983). On appeal, the Ninth Circuit relied on *Korwek* in declining to extend tolling to a subsequently filed class action, stating, "to extend tolling to class actions 'tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted parameters into the range of abusive options.'" *Robbin*, 835 F.2d at 214 (quoting *Korwek*, 827 F.2d at 879).

However, in *Catholic Social Services*, the Ninth Circuit abandoned *Robbin's* seemingly encompassing holding by allowing certification of a subsequent class comprised of individuals whose individual claims were tolled by an earlier class action. In *Catholic Social Services*, following district court certification of the class, Congress stripped federal courts of jurisdiction over the named plaintiffs. 232 F.3d at 1144. A second class action, which would have been time-barred if the

22

first suit did not toll the statute of limitations, named plaintiffs who alleged that they satisfied the new jurisdictional requirements. *Id.* In affirming the district court's application of *American Pipe* tolling, the en banc Ninth Circuit refused to distinguish, for tolling purposes, subsequent suits brought by individuals from those aggregated as class actions: "Strictly speaking, this is not a statute of limitations question at all. It is, rather, a question of whether plaintiffs whose individual actions are not barred may be permitted to use a class action to litigate those actions." *Id.* at 1147. In assessing that question, the Ninth Circuit distinguished its own decision in *Robbin*, as well as the *Korwek*, *Griffin*, and *Salazar-Calderon* decisions, on the basis that the plaintiffs were "not attempting to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class." *Id.* at 1149.

To be sure, *Catholic Social Services* involved a class that indeed had been certified before enactment of the statute abrogated the certification, a situation possibly unique in Circuit case law. However, its rationale undergirds the distinction this Court adopted in *McKowan* and which we iterate here.[7]

_____

[7] Although no court of appeals has yet applied tolling to subsequent class claims where certification in the prior class action had been denied on the basis of the lead plaintiffs' deficiencies as class representatives, a number of district courts have done so. *See i.e.*, *Shields v. Smith*, 1992 U.S. Dist. LEXIS 15718, *8 (N.D. Cal. Aug. 14, 1992); *In re Quarterdeck Office*

23

*Catholic Social Services* may be read narrowly or broadly. At its narrowest, *Catholic Social Services* is limited to the rare factual scenario in which the certification of a class is later abrogated by statute. This reading does not implicate the usual case where the class was not certified in the prior action, i.e., cases where the suitability of the putative class for class treatment was not reached, either because the action was dismissed or abandoned on other grounds. In a more broad sense, *Catholic Social Services* can be read as authority for our holding that class claims should be tolled where the district court denies class certification based on deficiencies of a class representative, and not on the validity of the class itself.

In *McKowan*, this Court distinguished the *Korwek* line of cases (the first approach) and rejected the Eleventh Circuit's categorical bar (the second approach) to allow intervenors to benefit from *American Pipe* tolling in an attempt to certify a class so long as the earlier class action was denied certification because the putative representative, but not the class itself, suffered a Rule 23 infirmity. Unlike the *Korwek* plaintiffs, the lead plaintiff in *McKowan* was not attempting to "resuscitate a class that a court ha[d] held to be inappropriate as a class action." *McKowan*, 295 F.3d at 386. Rather, the lead plaintiff

---

*Systems, Inc.*, No. CV-92-3970-DWW, 1994 WL 374452, *4 (C.D. Cal. Mar. 24, 1994); *In re Crazy Eddie Secs. Litig.*, 802 F. Supp. 804, 813 (E.D.N.Y. 1992); *Schur v. Friedman & Shaftan, P.C.*, 123 F.R.D. 611, 613 (N.D. Cal. 1988).

in *McKowan* "was not rejected because of any defects in the class itself but because of [his] deficiencies as a class representative." *Id.*; *see id.* at 388 ("[T]he *Griffin* panel's reasoning is inconsistent with our precedent in *Haas* where we approved *American Pipe* tolling for a subsequent representative's class claims after the original certified class representative was found wanting.").

V.

In light of the forgoing discussion, the basis for the Northern District of Georgia's denial of class certification is central to this appeal. We note as an initial matter that the District Court concluded that the Northern District of Georgia "denied certification with prejudice based on the inadequacy of the class representatives." *Yang*, 265 F. Supp. 2d at 471. Our own examination of the Northern District of Georgia's decision leads us to the same conclusion with respect to the Open Market and Telco classes: the denials of certification to these classes were based solely on deficiencies in the putative representatives. We therefore reverse the District Court's ruling and hold that *American Pipe* tolling applies to the class claims of the Open Market and Telco classes. As to the NACT class, however, the Northern District of Georgia's opinion indicates that class certification was denied for lack of numerosity – a class defect. Therefore, the District Court's refusal to apply *American Pipe* tolling to this class was correct and we will affirm its ruling that the current class claims of the NACT class are time-barred.

*Tanner and the Open Market Class*

The Northern District of Georgia began its analysis by noting that the class was sufficiently numerous.  The remainder of the court's analysis, however, focused on Tanner's suitability to be the lead plaintiff.  Not having reached the class members' suitability for class treatment beyond noting that Rule 23's numerosity requirement was satisfied, the District Court on remand will have to address the issue, and may yet determine that a Rule 23 defect exists in the class itself, requiring a denial of class certification or a division of issues and/or creation of subclasses pursuant to Rule 23(c)(4).

The Northern District of Georgia indicated that Tanner's particular WAXS trading behavior presented a hurdle to proving the reliance prong of the securities action such that it would be unfair to couple the fortunes of the Open Market class members to Tanner's claim.  The court explained that under the Supreme Court's endorsement of the fraud-on-the-market theory in *Basic Inc. v. Levinson*, 484 U.S. 224, 247 (1988), courts may presume that members of a putative class of stock purchasers relied on the integrity of market prices, alleged to be fraudulently inflated, in making purchasing decisions. Evidence of subjective reliance by individual purchasers is unnecessary.  The presumption of reliance is rebuttable, however, and the court explained why Tanner was too susceptible to anticipated defense arguments to be the Open Market class representative.  Moreover, the court was also concerned that Tanner had first purchased WAXS

26

stock in April 1998, a full year after the class period began, suggesting that Tanner's claims would not be adequately aligned with those of the class members. Significantly, the court did not address whether the class itself was suitable for employment of the fraud-on-the-market presumption, or whether the WAXS purchasing behavior of the class as a whole was sufficiently common to be aggregated in a class action.

The Northern District of Georgia noted that on January 5, 1999, the same day WAXS announced that poor sales of the CDX switch would lower its quarterly earnings to less than half of analysts' estimates, Tanner purchased 24,000 WAXS shares. By purchasing WAXS stock on the earnings announcement, the court reasoned, Tanner did not rely on the defendants' alleged misstatements of fact. This purchase undermined the reliance element necessary to his claim, and cast doubt on his suitability to be the Open Market Class representative. Indeed, Tanner's purchase may have placed him directly at odds with the class members he sought to represent. That is, the fate of class members dependent on the fraud-on-the-market theory to establish their reliance on the alleged misrepresentations of the defendants should not be tied to a representative who purchased WAXS stock immediately after the alleged misrepresentations were revealed.

Based on his entry late in the class period and his January 5, 1999, sale of WAXS stock, the court determined that "*Tanner has failed*, however, to meet *his* burden with regard to the

27

typicality, commonality, adequacy, and superiority requirements." (emphasis added). The Northern District of Georgia did not, however, indicate that the class as a whole also suffered from similar defects.

Though the deficiencies mentioned by the court often indicate defects in the class itself, the Northern District of Georgia's opinion reveals that the Open Market class was denied certification solely because Tanner was not an appropriate class representative and not because the class itself was deficient under Rule 23.

With respect to typicality, commonality, and adequacy, the court explained that because Tanner first entered the putative Open Market class half-way through the class period, it was "unclear whether common questions of law and fact predominate," and it could not "be assumed that Tanner [would] adequately represent those early members of the class as vigorously as the later members of the class." The court did not inquire whether the class members themselves had predominating common questions of law or fact supporting their claims, such that a typical lead plaintiff could be found to adequately represent the claims of the putative class members.

As this Court has stated, "Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class

28

action device." *Eisenberg v. Gagnon*, 766 F.2d 770, 775 (3d Cir. 1985). Given the prevalence of the class action mechanism in securities regulation, and because the Northern District of Georgia did not suggest that *In re World Access* was anything but a routine securities class action, we believe the Northern District of Georgia was referring solely to Tanner when speaking of typicality, commonality, and adequacy. Whether the class itself merits class treatment is an inquiry the District Court will address on remand.

Lastly, having noted that a class action may be maintained only when it is found to be superior to other available adjudicative methods, the Northern District of Georgia reasoned that Tanner's large stake in WAXS gave him adequate incentive to pursue his claim individually, and thus his resort to the class action device was unnecessary. Again, the court's inquiry focused entirely on Tanner; it did not address whether the class mechanism would be superior to other available methods of adjudication for the putative class members as a whole.

The court concluded by stating that, "[b]ased on this dearth of information and on the numerous other *concerns regarding Tanner's representation*, the court denies class certification for the Open Market class." (emphasis added). Each finding that led to the court's decision not to certify the Open Market class was tied to the particular weaknesses of Tanner as a lead plaintiff, and was not necessarily shared by the

29

class itself.

*Brothers and the Telco Class*

The Northern District of Georgia concluded that Brothers and the putative Telco Class had satisfied the reliance requirement under the § 10(b) and Rule 10b-5 claims because they acquired their WAXS securities in connection with a merger, and there was no evidence that Brothers failed to rely on the market pricing during the merger. However, the court found that Brothers had sold all his shares in WAXS just days after the merger took place. Therefore, not only might Brothers not be able to show that he was harmed by the alleged fraud, the court suggested that he may have actually profited from it due to the resulting inflated stock price. Thus, the court reasoned that Brothers was not an adequate and typical representative of the class because "[i]t would be entirely unfair to tie the fortunes of all potential Telco class members to that of a lead plaintiff who cannot satisfy the basic elements of the claims presented. Due to his sale of stock, Plaintiff Brothers has failed to meet his burden of showing that his claim is typical of those of other class members." As with the Open Market class, the Rule 23 deficiencies cited by the court were entirely Brothers' and did not pertain to the class itself.

*Thompson and the NACT Class*

The Northern District of Georgia observed that

30

"Thompson and all other members of the putative NACT class relied on the market to valuate properly the WAXS stock in order to achieve a fair exchange for their NACT securities" and that they satisfactorily alleged the elements of the §§ 20(a), 11 and 15 claims. The court concluded, however, that it "need not undergo an intense inquiry into the commonality, typicality, superiority and predominance requirements of [the] putative class action as Plaintiff Thompson has failed to meet her burden regarding numerosity." The court observed that because Thompson had not provided support for her claims pertaining to numerosity, despite repeated requests from the court, it had "no way of determining whether these millions of shares reside in the hands of a handful of individuals or in the hands of hundreds." The court concluded that it

> would usually deny the NACT class certification without prejudice as numerosity may be proven at a later date. In this case, however, the court has repeatedly requested additional facts and more precise briefing on the issue of class certification. As this is Plaintiff's second attempt at seeking class certification, the court finds that Plaintiff has no excuse for not meeting her burden on the basic grounds of numerosity.

Thus, in contrast to its findings regarding Tanner and the Open Market Class, and Brothers and the Telco class, the Northern District of Georgia did not base its denial of certification to Thompson and the NACT Class on representative-based reasons. Rather, it found that the record

31

did not support a conclusion that the class could satisfy the numerosity requirement. Although the Northern District of Georgia couched its findings in terms of Thompson's failure to meet her burden, what doomed certification for the class was the finding that numerosity was lacking – a class-based determination.

*Summary*

Despite framing its decision in terms that are more often used to describe class-based characteristics, the Northern District of Georgia's opinion indicates that it based its decision to deny certification to the Open Market and Telco Classes on deficiencies in the lead plaintiffs as representatives of the class.[8] In the absence of any authority which would make the invocation of a particular Rule 23 requirement definitive as to whether a denial of class certification was class- or representative-based, we evaluate the Northern District of Georgia's opinion as a whole. This review leads us to conclude that the Northern District of Georgia's decision as to the Open Market and Telco classes was based on deficiencies in the lead plaintiffs and not in the class itself, and the District Court's

---

[8] It is important to note that this is not a case in which Plaintiffs have attempted to repackage the class-based denial of their claims as being representative-based determinations. Rather, our conclusion rests entirely on the explanation provided by the Northern District of Georgia for its decision.

32

order to the extent it dismisses these class claims will be reversed. The NACT class, however, was denied certification because the evidence showed that the class failed Rule 23's numerosity requirement, a deficiency in the class itself. The District Court's order, to the extent that it denies certification of the NACT class, will be affirmed.

B.

In keeping with our Circuit precedent in *Haas* and *McKowan*, and because we can discern no principled reason to rule otherwise, we hold that where class certification has been denied solely on the basis of the lead plaintiffs' deficiencies as class representatives, and not because of the suitability of the claims for class treatment, *American Pipe* tolling applies to subsequent class actions. Since *American Pipe*, it has been well-settled that would-be class members are justified – even encouraged – in relying on a class action to represent their interests with respect to a particular claim or claims, and in refraining from the unnecessary filing of repetitious claims. *See American Pipe*, 414 U.S. at 550. The policy objectives of the class action device – efficient deployment of court resources and the ability to consolidate claims which would otherwise be too small to warrant individual lawsuits–continue to obtain after the rejection by a court of the proposed class representatives.

Drawing the line arbitrarily to allow tolling to apply to individual claims but not to class claims would deny many class

plaintiffs with small, potentially meritorious claims the opportunity for redress simply because they were unlucky enough to rely upon an inappropriate lead plaintiff. For many, this would be the end result, while others would file duplicative protective actions in order to preserve their rights lest the class representative be found deficient under Rule 23. Either of these outcomes runs counter to the policy behind Rule 23 and, indeed, to the reasoning employed by the Supreme Court in *American Pipe* and *Crown, Cork & Seal*.

Nor would the objectives of limitations periods be better served were we to hold otherwise. The defendants were on notice of the nature of the claims and the generic identities of the plaintiffs within the required period, eliminating the potential for unfair surprise and prompting them to preserve evidence which might otherwise have been lost.

Allowing tolling to apply to subsequent class actions where the original class was denied because of the lead plaintiffs' deficiencies as class representatives will not lead to the piggybacking or stacking of class action suits "indefinitely" as Defendants argue and as the Eleventh Circuit feared in *Griffin*. Rather, applying tolling under these circumstances will allow subsequent classes to pursue class claims until a court has definitively determined that the claims are not suitable for class treatment. Where repeated tolling is implicated and the class appears unable to put forward an appropriate lead plaintiff, courts may reasonably conclude that the class itself fails Rule 23

analysis.    Rather than arbitrarily eliminate the possibly meritorious claims of countless class members, we prefer to see careful case management employed to avoid the prospect of "indefinite" tolling.

We are cognizant of Justice Blackmun's admonition in *American Pipe* that lawyers are not to be encouraged "to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." 414 U.S. 561 (Blackmun, J., concurring).  We are also mindful of the warning in *Crown, Cork & Seal* that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse." 462 U.S. at 354 (Powell, J., concurring).  The rule announced here does not offend these concerns.  Allowing tolling in the circumstances described here is unrelated to the warnings expressed in *American Pipe* and *Crown, Cork & Seal*, which concerned the potential for abuse where counsel could manipulate a complaint to trigger tolling.  Here, there is no question that these would-be class members would have been eligible for tolling as intervenors under *American Pipe* and as individuals under *Crown, Cork & Seal*.  The question, then, is not whether tolling applies but simply how.

Finally, Defendants warn that "[t]his Court should avoid making the district courts in the Third Circuit a haven for unhappy plaintiffs' lawyers who cannot obtain class certification in the original court of their choosing."  Rather than inviting forum shopping, we believe our holding will lead to more

35

efficient handling of class actions by encouraging district judges to address the merits of class treatment for putative classes early in Rule 23 proceedings.

CONCLUSION

We hold that *American Pipe* tolling allows litigants whose individual lawsuits would have been timely with the benefit of tolling due to an earlier class action to aggregate their claims in a substantively identical class suit so long as the denial of certification in the earlier action was based solely on Rule 23 deficiencies of the putative representative. We also hold that *American Pipe* tolling does not apply to later class actions where a substantially identical class suit was denied certification due to a Rule 23 defect in the class itself. Accordingly, we will reverse the District Court's dismissals of the Open Market and Telco classes, affirm the dismissal of the NACT class, and remand this matter to the District Court for further proceedings consistent with this opinion.

ALITO, <u>Circuit Judge</u>, concurring and dissenting.


I join the opinion of the Court insofar as it holds that a prior action in which class certification is denied based solely on deficiencies of the class representative tolls the statute of limitations for filing a later, substantively identical action with

a new representative. The logic of our decision in <u>McKowan Lowe & Co. v. Jasmine, Ltd.</u>, 295 F.3d 380 (3d Cir.), <u>cert. denied</u>, 537 U.S. 1088 (2002), leads to this conclusion. I therefore agree with the majority that we must reverse the decision of the District Court with respect to the claims of the Telco Class, because class certification of those claims was denied on the ground that the lead plaintiff did not satisfy the typicality requirement of Federal Rule of Civil Procedure 23(a). <u>See</u> JA 402. I also agree with the majority that we should affirm the decision of the District Court with respect to the NACT Class because class certification of those claims was based on a class defect.

I disagree with the majority, however, insofar as it reverses the decision of the District Court with respect to the Open Market Class. Our decision in <u>McKowan Lowe</u> took pains to make it clear that the statute of limitations should not be tolled by a prior action in which class certification is denied based on "defects in the class itself," rather than "deficiencies" of the class representative. 295 F.3d at 386. Without this restriction on tolling, lawyers seeking to represent a plaintiff class could extend the statute of limitations almost indefinitely until they find a district court judge who is willing to certify the class. The lawyers could simply file a new, substantively identical action with a new class representative as soon as class certification is denied in the last previous action. <u>See</u> <u>McKowan Lowe</u>, 295 F.3d at 386.

37

In the present case, as the majority notes, Judge Evans of the Northern District of Georgia denied class certification in a "substantively identical suit." Maj. Op. at 4. Judge Evans stated that certification of the Open Market Class was denied for failure to meet "the typicality, *commonality*, adequacy, and *superiority* requirements." JA 389. Thus, Judge Evans found two fatal defects – lack of "commonality" and "superiority" – that, as the majority acknowledges, are generally "used to describe class-based characteristics." Maj. Op. at 32. Under McKowan Lowe, therefore, it would appear that we should hold that the prior action did not toll the statute of limitations with respect to the claims of the Open Market Class.

The majority, however, concludes in effect that Judge Evans, despite the language noted above, actually based her decision regarding the Open Market Class solely on deficiencies of the class representative, not defects in the class. For example, the majority stresses Judge Evans's statement that the proposed representative of the Open Market Class "*failed . . .* to meet *his* burden with regard to the typicality, commonality, adequacy, and superiority requirements." Maj. Op. at 28 (quoting JA 389) (emphasis added in majority opinion).

It is possible that the majority's interpretation of Judge

38

Evans's opinion is correct and that she did not really mean to hold either that there are not "questions of law or fact common to the [Open Market Class]," Fed. R. Civ. P. 23 (a)(2), or that class action treatment of the claims of that class would not be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23 (b)(3). But the fact remains that she stated that the commonality and superiority requirements were not met, and there is no way for us to remand this matter to Judge Evans for her to clarify the precise basis of her ruling.

In cases like this, therefore, we have two choices. We can take at face value the grounds cited by the court that previously denied class certification, or we can look beyond the terms used by that court and attempt to determine whether the court really meant to base its decision on deficiencies of the representative or defects in the class. I would take the former approach, because I believe that the alternative may lead to problems. Our circuit will attract actions in which courts in other circuits have denied class certification. Even when the courts denying certification state that their decisions are based on defects in the class, the courts of our circuit will be asked to look behind the text of the opinions denying certification and to determine whether the authors of those opinions really meant to say or should have said what they did. We must keep in mind that, in most circuits, the distinction drawn in <u>McKowan Lowe</u>

between deficiencies in the representative and defects in the class has no bearing on the tolling of the statute of limitations, and therefore district courts in those circuits may not always make it clear whether their rulings rest on representative- or class-based defects.  We also should not  underestimate the ability of lawyers representing would-be plaintiff classes to recharacterize rulings that, read literally, appear to be class-based.

I would, accordingly, adopt a rule that takes decisions denying class certification at face value.  Because I am concerned about the effects of the majority's approach, I must respectfully dissent in part.