Filed 6/3/15  Certified for publication 6/24/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE FALK, | B251182 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC496720) |
| v. | |
| CHILDREN'S HOSPITAL LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jane L. Johnson, Judge.  Affirmed in part; reversed in part.

The Gold Firm, Steven Bruce Gold; Law Office of Joseph Antonelli, Joseph Antonelli, Janelle Carney and Jason Hatcher for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Derek R. Havel, Daniel J. McQueen, Marlene M. Nicolas, Matthew A. Tobias; Ballard Rosenberg Golper & Savitt and Linda Miller Savitt for Defendant and Respondent.

## INTRODUCTION

The trial court granted summary judgment in favor of defendant and respondent Children's Hospital Los Angeles (Children's Hospital or the hospital) and against plaintiff and appellant Michelle Falk on the ground her wage and labor claims were time-barred. The court rejected Falk's argument the filing of a prior class action tolled her limitations periods, under *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 (*American Pipe*), which held that, under certain circumstances, the filing of a class action tolls a limitations period for class members who file subsequent actions. We find that *American Pipe* tolling applies to some of Falk's claims, but not to others. We therefore affirm in part and reverse in part the judgment.

## BACKGROUND

### I. The class action complaints.

Since May 2007, four class action complaints, including Falk's, have been filed against Children's Hospital raising wage and labor violations.

#### A. May 1, 2007: The *Palazzolo* class action.[1]

Children's Hospital employed Thomas Palazzolo from July 2005 to January 2007 as a non-exempt, hourly paid patient care service aide. On May 1, 2007, Palazzolo filed a class action complaint on behalf of "[a]ll non-exempt or hourly paid persons." The complaint asserted these causes of action:

(1) Violation of Labor Code sections 510, 511, and 1198[2] for unpaid overtime: plaintiff and class members worked more than 8 hours per day, 12 hours per day or 40 hours per week without overtime compensation. "[I]ncentives in the form of shift differentials" were not incorporated in overtime.

---

[1]     *Palazzolo v. Children's Hospital Los Angeles* (Super. Ct. L.A. County, 2007, No. BC370354).

[2]     All further undesignated statutory references are to the Labor Code.

(2) Violation of sections 201 and 202 for failure to pay wages upon termination: the hospital failed to pay earned and unearned wages at the time of discharge or within 72 hours of an employee leaving.

(3) Violation of section 204 for failure to pay wages: the hospital failed to pay wages on regular paydays.

(4) Violation of sections 226.7, subdivision (a), and 512, subdivision (a), for denial of meal periods: plaintiffs were required to work without meal periods and were not compensated for work performed during meal periods.

(5) Violation of section 226.7, subdivision (a), for denial of rest periods: plaintiffs were required to work without compensation during rest periods.

(6) Violation of section 226, subdivision (a), for improper wage statements: the hospital failed to provide "complete and accurate wage statements that include" the "total number of hours worked" and employees' social security numbers.

(7) Violation of section 221 seeking repayment of wages to employer: the hospital deducted from wages "parking fees and ID deposits" without obtaining prior written authorization.

(8) Violation of section 2802 seeking indemnification for employee's expenses: the hospital failed to reimburse "necessary business-related expenses," including parking fees and ID deposits. "Specifically, [the hospital] had, and continue[s] to have, a policy and practice of requiring employees . . . to pay for parking fees and ID deposits out of their own funds" and not reimbursing them.

(9) Conversion and theft of labor: the hospital refused to pay wages due on the next payday after wages were earned.

(10) Violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).

Summary judgment was entered in the hospital's favor on April 7, 2009. The trial court ruled on the merits that there were no triable issues of material fact. Class claims and class certification were never addressed.

3

We affirmed the judgment. (*Palazzolo v. Children's Hospital of Los Angeles* (Dec. 1, 2010, B216508) [nonpub. opn.].) Class certification was also not raised or addressed in the appeal. The remittitur issued on February 3, 2011.

**B.  January 27, 2012:  The *Mays* class action.[3]**

Denise Mays, a registered nurse, worked for Children's Hospital as a "non-exempt hourly employee." She began working for the hospital in September 2008, and her employment ended May 31, 2012.

Mays's operative class action complaint[4] alleged these causes of action against the hospital:

(1) Recovery of unpaid wages (§§ 204, 206, 218, 226, 510, 511, 1194, 1198):  the hospital, as a matter of policy, scheduled non-exempt hourly employees to work in excess of eight hours per day and/or in excess of 40 hours per pay week, without paying overtime compensation. The hospital failed to pay "all wages earned, including minimum wages, straight time pay, overtime, and remuneration when calculating the hourly non-exempt employees regular rate of pay . . . ." The hospital, specifically, employed a "two rate system" in paying its hourly non-exempt employees who were regularly scheduled to 12-hour shifts:  12-hour shift, non-exempt employees who worked overtime were paid a "lower 'standard wage,' or 'straight time wage,' or 'base pay wage,' while employees who did not work overtime were paid the correct wage.[5] As to the "regular rate," the hospital failed to include compensation for "non-discretionary bonus, charge nurse premium, shift differential premium, preceptor pay and other types of remuneration."

---

[3]  *Mays v. Children's Hospital Los Angeles* (Super. Ct. L.A. County, 2013, No. BC477830) (*Mays*).

[4]  Mays filed first (February 6, 2012), second (August 15, 2012), and third (March 29, 2013) amended complaints.

[5]  Mays explained that if an employee who is scheduled to work a 12-hour shift works an eight-hour shift, she is paid $35 per hour. If that same employee works a 12-hour shift, the hospital reduces her pay to $30 per hour.

4

(2) Violation of Business and Professions Code section 17200.

(3) Failure to pay wages upon separation from employment (§ 200): the hospital's final paychecks failed to include all pay owed, including penalties for each day the employee was paid late.

(4) Failure to allow rest periods (§ 226.7): the hospital has a policy of discouraging non-exempt employees from taking a rest break for any work period greater than two hours and up to four hours.

(5) Failure to allow meal periods (§ 226.7): the hospital failed to provide and discouraged legally compliant meal periods. Employees were required to carry pagers and to answer them while on breaks. The hospital required employees to punch in and out for meal periods, regardless of whether the meal period was taken.

(6) Failure to provide proper wage statements (§ 226): the hospital failed to provide the class with an itemized wage statement that included total hours worked, net wages earned, and all applicable hourly rates and the corresponding number of hours worked.

(7) Recovery of unpaid wages and penalties (§§ 221, 223, 224): the hospital had a "practice of paying each employee a differing hourly rate of pay that varies depending solely on the number of hours worked by the employee who is regularly scheduled to work 12 hours in a day." This "retention operates as a 'kickback' " to the hospital.

(8) Private Attorney General Act (§§ 2698-2699).

In *Mays*, Children's Hospital filed a form notice of related case to *Palazzolo*.[6]

**C.      December 3, 2012:  The *Falk* class action.**

Falk worked at Children's Hospital from March 6, 2006 to August 25, 2006 as a licensed vocational nurse. Falk's class action alleged these causes of action, substantively identical to *Mays*, against the hospital:[7]

---

[6]      The hospital also filed, in *Schmidt*, discussed *post,* a notice of related case to *Mays*.

[7]      The hospital conceded for the purposes of the motion for summary judgment that *Mays* and *Falk* "set forth essentially the same claims for unpaid wages under a 'dual rate'

5

(1) Failure to reimburse for business expenses (§ 2802): Falk was not reimbursed for work related expenses, such as parking at the facility.

(2) Injunctive and declaratory relief and restitution (Bus. & Prof. Code, § 17200).

(3) Recovery of unpaid wages and penalties (§§ 204, 206, 218, 226, 510, 511, 1194, 1198): the hospital failed to pay all wages earned, including minimum wages, straight time pay, overtime, and remuneration.

(4) Failure to provide proper wage statements (§ 226).

(5) Failure to allow meal periods (§§ 226.7, 512).

(6) Failure to allow rest periods (§§ 226.7, 512).

(7) Failure to pay wages upon separation from employment (§ 200).

**D.      January 24, 2013:  The *Schmidt* action.[8]**

On January 24, 2013, Joseph Schmidt filed a class action for, among other things, Labor Code violations against Children's Hospital.[9]

## II.     Children's Hospital moves for summary adjudication and judgment.[10]

A.     *The motion for summary judgment.*

Before class certification was decided, the hospital moved for summary judgment on the ground that the statutes of limitations applicable to *Falk* were not tolled by *Palazzolo* or *Mays*.  The hospital argued that *American Pipe* tolling did not apply to Falk's claims because the judgment in *Palazzolo* was the equivalent of an adverse ruling on the substantive merits of the class; *American Pipe* tolling applies only to individual

---

theory, as well as nearly identical meal period, rest period and derivative causes of action."

[8]     *Schmidt v. Children's Hospital Los Angeles* (Super. Ct. L.A. County, 2013, No. BC499818) (*Schmidt*).

[9]     We do not discuss *Schmidt* in detail, because it is irrelevant to the issue of tolling, as *Schmidt* was filed *after* Falk's complaint.

[10]     The parties agreed that the trial court would consider, in a motion for summary adjudication, the statute of limitations issue.

actions and not to successive class actions; and *Palazzolo* did not place the hospital on notice of Falk's dual rate wage claims and highly specific meal and rest period claims.

Falk responded that *Palazzolo* tolled her claims; the hospital was judicially estopped from arguing that *Falk* was unrelated to *Mays* and *Palazzolo*; and the statutes of limitations should be equitably tolled.

It was undisputed that the trial and appellate courts in *Palazzolo* never addressed class certification.

B.     *The trial court's ruling.*

The trial court granted summary judgment against Falk on July 3, 2013.  Judgment was entered on July 15, 2013.  The court found *American Pipe* tolling inapplicable because judgment in *Palazzolo* was on the ground the individual plaintiff had no viable causes of action.  The court also rejected the notion that *American Pipe* permits "piggybacking" of successive class actions.  Even if *American Pipe* applied, the court found that *Palazzolo* did not put the hospital on notice of the "esoteric 'dual rate' " claim raised by Falk.[11]

## DISCUSSION

**I.     Standard of review.**

We independently review the trial court's order granting summary judgment and determine if the undisputed facts establish that Children's Hospital is entitled to judgment as a matter of law on its statute of limitations defense.  (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 860.)

---

[11]     The trial court also found that *Palazzolo* did not toll the statutes of limitation for the claims in *Mays*.  But because Mays filed her complaint on January 27, 2012, while she was still employed by the hospital, her claims were allowed to go forward based on that filing date.

7

## II.    *American Pipe* **tolling.**

Falk's employment ended on August 25, 2006.  Assuming that four years is the outermost limitations period applicable to her claims,[12] her complaint had to be filed by August 25, 2010 to state a claim.  Her complaint was not filed until December 3, 2012.  Falk, however, contends that her complaint was timely because any limitations period was tolled from May 1, 2007 (the day *Palazzolo* was filed) to February 3, 2011 (the day we issued the remittitur in *Palazzolo*),[13] and from January 27, 2012 (the day *Mays* was filed) under *American Pipe, supra*, 414 U.S. 538.

A.    American Pipe *tolling commences when the initial class action is filed*.

*American Pipe* applied tolling under the following circumstances.  Utah filed a putative class action.  Class certification was denied, under Federal Rules of Civil Procedure, rule 23 (28 U.S.C.) (Rule 23), because the class was so numerous that joinder of all members was impracticable.  (*American Pipe*, *supra*, 414 U.S. at p. 543.)  Class members then filed motions to intervene, but their motions were denied on statute of limitations grounds.  (*Id.* at p. 544.)  *American Pipe* concluded that Utah's filing of the putative class action tolled the statute of limitations for the intervenors:  "where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class

---

[12]    The parties appear to agree that actions for a penalty (e.g., the wage statement cause of action) are subject to a one-year limitations period (Code Civ. Proc., § 340, subd. (a); *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1108); actions for unpaid wages are subject to a three-year statute of limitations (Code Civ. Proc., § 338, subd. (a); *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1395-1396); and actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitations (Bus. & Prof. Code, § 17208; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178-179).

[13]    We discuss *post* whether any tolling period would be to the day judgment was entered (April 7, 2009) or the day the remittitur issued (February 3, 2011).

8

who make timely motions to intervene after the court has found the suit inappropriate for class action status." (*Id.* at pp. 552-553.)

*Crown, Cork & Seal Co. v. Parker* (1983) 462 U.S. 345 (*Crown, Cork*), extended *American Pipe.* The plaintiffs filed a class action discrimination case. Their motion for class certification was denied because the named plaintiffs' claims were atypical of those of the class, they were not adequate representatives, and the class was not so numerous as to make joinder impracticable. (*Crown, Cork,* at pp. 347-348.) After denial of class certification, Parker filed an individual action alleging similar claims as in the class action. *Crown, Cork* held that the "filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' [citation] not just as to intervenors." (*Id.* at p. 350.) "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." (*Id.* at p. 354.)

Our California Supreme Court summarized the tolling rule derived from *American Pipe* and *Crown, Cork*: "under limited circumstances, if class certification is denied, the statute of limitations is tolled from the time of commencement of the suit to the time of denial of certification for all purported members of the class who either make timely motions to intervene in the surviving individual action [citation], or who timely file their individual actions [citation]." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1119 (*Jolly*).)

Based on *American Pipe* and its progeny, Falk contends that the filing of *Palazzolo*, as well as *Mays*, tolled any limitations periods for her subsequent class action. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.* (7th Cir. 2011) 642 F.3d 560, 562 (*Sawyer*), is instructive. A class action was filed. Before the district court had decided whether to certify the class, the plaintiff voluntarily dismissed the complaint, leaving the other putative class members "in the lurch." (*Id.* at p. 561.) Sawyer tried to intervene in the action to keep it alive, but the district court denied intervention. Sawyer therefore filed his own class action. In applying *American Pipe* tolling to Sawyer's action, the

9

court rejected the defendant's argument the initial action did not "count" because it was " 'never a class action.' " (*Sawyer,* at p. 563.) That could not be determinative, because *American Pipe* and *Crown, Cork* also were never class actions. (*Ibid.*)

Rather, the "rationale of *American Pipe* does not permit a distinction among situations in which the putative class representative gives up before, or after, the judge decides whether the case may proceed on behalf of a class. Tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action—which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad." (*Sawyer, supra,* 642 F.3d at p. 563; see also *American Pipe, supra,* 414 U.S. at p. 554 ["*the commencement* of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class"], italics added.) *American Pipe*'s "goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends—denial of class certification by the judge, abandonment by the plaintiff, or any other fashion—is irrelevant." (*Sawyer,* at p. 562.)[14]

Denial of certification, however, is important to the extent denial is based on a "reason that would be equally applicable to any later suit," "for example, that the supposed victims are too few to justify class litigation, that a common question does not predominate, or that person-specific issues would make class treatment unmanageable," in which circumstances tolling would not apply. (*Sawyer, supra,* 642 F.3d at p. 564; see generally *Yang v. Odom* (3d Cir. 2004) 392 F.3d 97, 104 ["*American Pipe* tolling applies to would-be class members who file a class action following the denial of class certification due to Rule 23 deficiencies of the class representative. *American Pipe* tolling would not apply to sequential class actions where the earlier denial of certification

---

**14**     Accord, *Leyse v. Bank of America, N.A.* (3d Cir. 2013) 538 Fed.Appx. 156.

was based on a Rule 23 defect in the class itself"];[15] *McKowan Lowe & Co., Ltd v. Jasmine, Ltd.* (3d Cir. 2002) 295 F.3d 380, 389 ["class claims of intervening class members are tolled if" class certification is denied for "reasons unrelated to the appropriateness of the substantive claims for certification"]; *Perkin v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 492, 507-508 (*Perkin*) [class certification was not denied because of " 'subtle factors' " but because of insufficient commonality and the class action was not superior to individual litigation; tolling therefore was inappropriate].)

What happened here is similar to *Sawyer*. *Palazzolo* was filed as a class action. Class certification was never denied or granted.[16] Indeed, the issue was never addressed in the trial court. Instead, the hospital chose to move for summary judgment on Palazzolo's *individual* claims, before the certification issue was decided.[17] That motion for summary judgment was granted because Palazzolo, *not the class*, failed to state viable

---

[15] *Yang* agreed with a line of cases refusing to "toll limitations periods for substantively identical class actions in which the earlier putative class was denied certification because the substantive claims were inappropriate for class treatment." (*Yang v. Odom*, *supra*, 392 F.3d at p. 104.)

[16] *American Pipe* tolling has been applied in other cases where no class certification decision was rendered. (*In re Hanford Nuclear Reservation Litigation* (9th Cir. 2008) 534 F.3d 986, 1008-1009 [motion for class certification withdrawn; class members who filed individual suits while the motion for class certification was pending were entitled to *American Pipe* tolling]; *In re Worldcom Securities Litigation* (2d Cir. 2007) 496 F.3d 245, 256 ["because Appellants were members of a class asserted in a class action complaint, their limitations period was tolled under the doctrine of *American Pipe* until such time as they ceased to be members of the asserted class, notwithstanding that they also filed individual actions prior to the class certification decision"]; see *Kandel v. Brother Int'l Corp.* (C.D.Cal. May 12, 2009, No. CV 08-1040 DSF (RCx)) 2009 U.S.Dist. Lexis 105242 [tolling applied to second class action filed while certification of first class action pending; the two class actions were consolidated].)

[17] Where a lead plaintiff in a class action is no longer a suitable representative, leave should be granted to add a new representative; this "rule prevents a prospective defendant from avoiding a class action by 'picking off' prospective class action plaintiffs one by one." (*Larner v. Los Angeles Doctors Hospital Associates, LP* (2008) 168 Cal.App.4th 1291, 1298-1299.)

11

causes of action.  The merits of Palazzolo's individual claims were therefore addressed and adjudicated but not the merits of the class claims.  Although it appears that Palazzolo tried to preserve the class claims, he failed.[18]  Like the putative class members left in a "lurch" when the lead plaintiff voluntarily dismissed the class action in *Sawyer*, the putative class members in *Palazzolo* were, through no fault of their own, left without an action to pursue their claims.  Where certification was not denied based on a reason that would be applicable to a subsequent action or, as here, not addressed at all, *American Pipe* tolling should apply.

        B.      Palazzolo *gave Children's Hospital sufficient notice of claims in* Falk.

        Still, tolling will not apply unless the two policy considerations underlying *American Pipe* are met.  Those considerations are, first, protection of efficiency and economy in litigation as promoted by the class action device, and, second, effectuation of the purpose of the statute of limitations to protect a defendant from unfair claims.  (*Jolly, supra,* 44 Cal.3d at pp. 1121-1122.)  Crucial to this second consideration is that the initial class action provide the defendant with sufficient notice of the substantive claims brought against it as well as the " 'number and generic identities of the potential plaintiffs.' " (*Id.* at p. 1121, quoting *American Pipe, supra*, 414 U.S. at pp. 554-555.)

        Justice Blackmun thus cautioned that *American Pipe* "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights. . . .  [¶]  . . . [Class members] will be permitted to press their claims subject only to the requirement that they have an interest relating to the property or transaction and be

---

**18**      After summary judgment was granted, Palazzolo filed an application to amend the complaint to add Lisa Aguilar as a class representative, and Aguilar filed an application to intervene.  (*Palazzolo v. Children's Hospital, supra,* B216508, at [p. 7, fn. 5].)  Aguilar's application was denied and the trial court did not rule on Palazzolo's motion.  We dismissed an appeal of those matters on jurisdictional grounds.  (*Ibid.*)

      Falk suggests that Palazzolo's attorney committed malpractice by failing to preserve the class claims, and she submits documents showing that Palazzolo's trial counsel was sued for malpractice in connection with its handling of another class action.

12

impaired or impeded in their ability to protect that interest. . . . Such claims, therefore, invariably will concern the same evidence, memories, and witnesses as the subject matter of the original class suit, and the defendant will not be prejudiced by later intervention . . . ." (*American Pipe, supra,* 414 U.S. at pp. 561-562 (conc. opn. of Blackmun, J.); see also *Crown, Cork, supra,* 462 U.S. at p. 354 ["The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status"] (conc. opn. of Powell, J.).)

Hence, that the initial class action put the defendant on notice of claims against it is essential to the applicability of tolling. (*Crown, Cork, supra,* 462 U.S. at p. 355 (conc. opn. of Powell, J.); *Jolly, supra,* 44 Cal.3d at p. 1122 [prior class action involving the drug DES did not toll subsequent personal injury action for DES-related claims; noting that mass tort claims are not amenable to class actions].) The claims in the first action need not necessarily be identical to the ones in the subsequent action, but they must be substantively similar, based on the same claims and subject matter and similar evidence. (*Perkin, supra,* 225 Cal.App.4th at p. 504; see, e.g., *Tosti v. City of Los Angeles* (9th Cir. 1985) 754 F.2d 1485, 1489.)

Did *Palazzolo* put Children's Hospital on sufficient notice of the claims in *Falk*? *Palazzolo* was light on specifics. It was brought on behalf of "all non-exempt or hourly" employees. As to the unpaid wages/overtime claim, the complaint generically alleged that the hospital failed to pay "premium wages for overtime compensation" at one and a half or two times the regular hourly rate. The pleading also referred to "incentives in the form of shift differentials" which were not incorporated in overtime.[19]

---

[19] In affirming the judgment in *Palazzolo*, we noted that the complaint alleged plaintiff "and the putative class worked in excess of 12 hours per day for which they were not compensated, and the shift differentials were not properly calculated into the overtime rate of pay. [¶] Palazzolo's opinion that the shift differential threw off the overtime compensation does not raise a triable issue of fact as to the proper overtime rate. This evidence does not dispute the Children[']s Hospital's overtime policy complies

13

In contrast to these general allegations in *Palazzolo*, *Mays* and *Falk* were specific. With respect to unpaid wages, *Mays* and *Falk* alleged that the hospital used a "dual rate" compensation system that deprived employees of proper overtime pay by reducing the "regular rate of pay" for overtime hours. In other words, a 12-hour shift employee was paid a lower hourly rate than an eight-hour employee to offset the overtime hours. The 12-hour shift employees against whom this dual rate scheme was instituted were a "subclass" of a " 'regular rate class.' " The regular rate class were "hourly non-exempt employees . . . from January 2003 to the present and who were not paid all earned wages, as a result of the [hospital's] failure to include certain remuneration that must be included in hourly non-exempt employees' regular rate." The "remuneration" includes forms of compensation such as "nondiscretionary bonuses, charge nurse premium, shift differentials premium, preceptor premium, shift bonuses, and in-house registry into the hourly non-exempt employees' regular rate." "Plaintiff . . . alleges that [the hospital] does not add all compensation paid to hourly non-exempt employees when calculating the regular rate as required by law."[20]

Tolling applies. *Palazzolo* claimed that the hospital failed to pay proper overtime. *Falk* raises the same claim, although *Falk* explains in detail *how* overtime was improperly calculated by describing the dual rate system. *Falk*'s specificity does not undermine the notice the hospital had, by virtue of *Palazzolo*, that the hospital was allegedly not paying legal overtime wages. The evidence to support both claims would be the same or similar, in that how the overtime rate is calculated would be at issue in *Palazzolo* and *Falk*. Had

with the law." (*Palazzolo v. Children's Hospital of Los Angeles, supra,* B216508, at [pp. 9-10].)

[20]    It is unclear whether Falk alleges a class of non-exempt hourly workers who do not necessarily work overtime but who the hospital nonetheless fails to pay the proper regular rate of pay by excluding other remuneration. Because no party raised this issue, we do not address whether *Palazzolo*, which was limited to overtime pay, put the hospital on notice of any claim that all non-exempt hourly employees were not paid the proper regular rate of pay.

*Palazzolo* gone forward, evidence of any dual rate scheme presumably would have been discovered.

Similarly, as to causes of action concerning meal and rest periods, *Palazzolo* and *Falk* raise the same substantive claims. *Palazzolo* alleged, generally, that employees were required to work without meal and rest periods and were not compensated for work performed during those periods. *Falk* elaborated: the hospital discouraged these periods, required the class to carry pagers and to answer them during meal periods, and required hourly employees to punch out and in for meal periods even if a meal was not taken. *Falk*'s elaboration of the ways in which the class was deprived of meal and rest periods does not somehow render the meal and rest period claims different from those in *Palazzolo.* Although the hospital dismisses the similarity in the evidence and witnesses in *Palazzolo* and *Falk* as neither here nor there, for this will often be the case in wage and hour lawsuits against an entity, the similarity in evidence and witnesses weighs in favor of tolling.

The hospital concedes that the Business and Professions Code section 17200, improper wage statement, and waiting time penalty claims are derivative of the unpaid wages/overtime and meal and rest period claims. Because they rise or fall based on the unpaid wages and meal and rest period claims that we have found subject to tolling, they are also tolled.[21]

The timeliness, however, of Falk's claims still depends on the length of the tolling period, which we address next.

C.     *The tolling period.*

The tolling period began May 1, 2007, when *Palazzolo* was filed. The parties disagree as to when the tolling period ended.

The hospital contends that any tolling period ended on April 7, 2009, when judgment was entered in *Palazzolo.* The hospital thus equates the judgment with a denial

---

[21]     Falk's last day of work was August 25, 2006. Absent tolling, she therefore had to August 25, 2007 to file one-year claims; to August 25, 2009 to file three-year claims; and to August 25, 2010 to file four-year claims.

15

of class certification. (See generally *Jolly, supra,* 44 Cal.3d at p. 1119 [*American Pipe* held that "under limited circumstances, if class certification is denied, the statute of limitations is tolled from the time of commencement of the suit to the time of denial of certification"]; *Bangert v. Narmco Materials, Inc.* (1984) 163 Cal.App.3d 207, 212-213 [statute of limitations tolled until the day class certification denied].)

Falk contends that the tolling period ended February 3, 2011, when the remittitur issued in *Palazzolo*. She distinguishes *Jolly* and *Bangert* because no class certification ruling was ever made in *Palazzolo* like in those cases. Falk again cites *Sawyer*, which found, "[t]olling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action." (*Sawyer*, *supra*, 642 F.3d at p. 563.)

Under the somewhat unique circumstances here, where no certification decision was made before the action was dismissed, tolling until the date the remittitur issued, thereby conclusively ending the case and any opportunity putative class members might have had to intervene in *Palazzolo*, is equitable. The hospital chose to litigate the merits of Palazzolo's individual claims before the class was certified. (See *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1081 [procedural class-action issues must ordinarily be resolved before a decision on the merits]; *Williams v. Superior Court* (2013) 221 Cal.App.4th 1353, 1360 [class certification motion is not a trial on the merits].) The hospital took the risk that the putative class would remain extant when the hospital chose to attack Palazzolo's individual claims before class certification could be decided.

Falk's claims were therefore tolled from May 1, 2007 to February 3, 2011 (1375 days or 3 years 9 months 3 days). Because 249 days[22] had already run on Falk's claims by the time *Palazzolo* was filed, she only had 116 days left to file her complaint to preserve any cause of action subject to a one-year limitations period. Even assuming that *Mays* started a new tolling period, 116 days from February 3, 2011 expired before *Mays* filed her class action on January 27, 2012. Claims subject to a one-year limitations

---

[22] Falk's employment ended August 25, 2006. Two hundred forty-nine days later, *Palazzolo* was commenced, on May 1, 2007.

16

period, i.e., the wage statement claim, are therefore time-barred. [23]  Remaining claims subject to a three-or four-year limitations period are timely.

D.      *"Piggybacking" class actions is, under certain circumstances, permissible.*

*American Pipe* and *Crown, Cork* applied tolling to individuals *intervening* in the initial putative class action and to subsequent *individual* actions.  They did not address subsequent *class* actions seeking the benefit of tolling based on a prior class action.  The valid concern is "stacking" or "piggybacking" class actions (as opposed to individual actions) could allow a limitations period to run indefinitely.

But the Ninth Circuit has allowed "piggybacking" of class actions under certain circumstances:  if class certification is denied in the earlier action based solely on Rule 23 deficiencies in the putative class representative—and not on Rule 23 deficiencies in the class itself—then tolling applies.  (*Yang v. Odom, supra,* 392 F.3d 97; *Catholic Social Services, Inc. v. I.N.S.* (9th Cir. 2000) 232 F.3d 1139 [successive class actions permissible where the subsequent class is not attempting to relitigate an earlier denial of class certification or to correct a procedural deficiency in the earlier would-be class]; see *Kandel v. Brother Int'l Corp., supra,* 2009 U.S.Dist. Lexis 105242 [tolling applies to second class action, consolidated with the first, where second action asserted identical claims against defendant and did not seek to relitigate a denial of class certification or correct a procedural deficiency]; *Sawyer, supra,* 642 F.3d at pp. 563-565; Wasserman, *Tolling:  The American Pipe Tolling Rule and Successive Class Actions* (2006) 58 Fla.

---

[23]      Falk appears to concede that this claim is barred, and we therefore do not reach any argument regarding judicial estoppel and/or equitable tolling except to note that a notice of related case does not constitute an admission that matters are "related" for the purposes of judicial estoppel.  (See generally *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987 [the "doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]]"; *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181; Cal. Rules of Court, rule 3.300 [a notice of related case is a procedural, case management device obligating parties to inform the court whether an action is related to another].)

17

L.Rev. 803; but see *Robbin v. Fluor Corp.* (9th Cir. 1987) 835 F.2d 213 [stacking limitations periods by filing successive class actions is not permissible].)

Because there was no ruling in *Palazzolo* implicating any deficiency in the putative class (as opposed to Palazzolo's individual claims), Falk may file a successive class action.[24]

## DISPOSITION

The judgment is affirmed in part and reversed in part. The judgment is affirmed as to claims subject to a one-year limitations period. The judgment is reversed as to claims subject to a three-or four-year limitations period. The parties are to bear their own costs on appeal.

ALDRICH, J.

WE CONCUR:

KITCHING, Acting P. J.

EGERTON, J.[*]

---

[24] We need not address the propriety of "double piggybacking," because Falk's claims, except those subject to a one-year limitations period, are timely based on the tolling period established by *Palazzolo.*

[*] Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed:  6/24/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE FALK, | B251182 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC496720) |
| v. | ORDER CERTIFYING |
| CHILDREN'S HOSPITAL LOS ANGELES, | OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on June 3, 2015, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the judgment.]