**Rodney HOFFMAN, Plaintiff,**

v.

**BLATTNER ENERGY, INC., Defendant.**

**Case No. ED CV 14-2195 DMG (DTBx)**

United States District Court,
C.D. California.

Signed 06/15/2016

Douglas Han, Shunt Tatavos-Gharajeh, Justice Law Corporation, Glendale, CA, Kenneth H. Yoon, Stephanie Emi Yasuda, Law Offices of Kenneth H. Yoon, Los Angeles, CA, Marshall Ryan Lurtz, San Diego, CA, for Plaintiff.

Amanda N. Fu, Littler Mendelson PC, San Francisco, CA, Carly M. Nese, Dominic John Messiha, Littler Mendelson PC, Los Angeles, CA, Julie A. Dunne, Littler Mendelson, San Diego, CA, for Defendant.

## ORDER RE: PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
### [37]

DOLLY M. GEE UNITED STATES DISTRICT JUDGE

This matter is before the Court on Plaintiff Rodney Hoffman's motion for class certification ("Class Cert.") [Doc. # 37]. Having duly considered the parties' written submissions, the Court now renders its decision.

### I.

### PROCEDURAL BACKGROUND

On June 3, 2015, Hoffman filed the operative First Amended Complaint ("FAC"), alleging that Defendant Blattner Energy, Inc., violated various California wage and hour laws. [Doc. # 29.] On September 29, 2015, Hoffman filed the Motion for Class Certification. [Doc. # 37.] On December 4, 2015, Blattner filed its Opposition. [Doc. # 51.] On February 22, 2016, Hoffman filed his Reply. [Doc. # 77.] On March 2, 2016, with the Court's leave, Blattner filed a Sur-Reply.

[Doc. ## 83, 85.] On March 3, 2016, Hoffman filed his Reply to the Sur-Reply, without leave of Court. [Doc. # 86.][1]

## II.

## FACTUAL BACKGROUND

### A. The Parties

Blattner is a corporation that constructs solar and wind-powered projects in California and other states. From 2010 to 2015, Blattner had 21 projects located at 15 different cities in California. Deposition of Sherri Lemke ("Lemke Depo.") at 267-68; Declaration of Sherri Lemke ("Lemke Decl.") ¶ 2. For each wind or solar project, Blattner employs individuals in various positions, including water truck driver, heavy equipment operator, solar installer, tractor operator, rough terrain crane operator, and turbine installer, to name a few. Lemke Decl. ¶ 5. Drivers and operators typically work in air-conditioned vehicles for the majority of their shifts. *Id.*

Hoffman was employed by Blattner from June 2, 2014 to sometime in July 2014. Deposition of Rodney Hoffman ("Hoffman Depo.") at 123, Ex. 3 [Doc. # 52]. His work included construction of a solar panel project near or in Borrego Springs, California. Declaration of Rodney Hoffman ("Hoffman Decl.") ¶ 2 [Doc. # 37-12]; Hoffman Depo. at 18.

### B. Hoffman's Allegations and Proposed Classes

Hoffman alleges that Blattner violated California's wage and hour laws, and the state's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* by failing to pay puta-

tive class members' minimum and overtime wages, provide meal and recovery periods, reimburse necessary expenses, provide accurate wage statements, or pay wages when due. FAC ¶¶ 26-74.

Pursuant to Federal Rules of Civil Procedure 23, Hoffman moves to certify the following class:

- **Overall Class**: All current and former non-exempt employees of Defendants [sic] who worked on construction projects in California and were paid on an hourly basis from February 21, 2010 to the present.

Additionally, Hoffman seeks to certify the following eight subclasses:

- **On-Duty Meal Period Subclass**: All Defendants' [sic] non-exempt employees who executed an Authorization for an On-Duty Meal Period and who worked one or more shifts in excess of six (6) hours on construction projects in California and were not provided a 30-minute break during which they were relieved of all duties, during the period from February 21, 2010 to the present.

- **Meal Period Subclass**: All Defendants' [sic] non-exempt employees who worked one or more shifts in excess of six (6) hours on construction projects in California and were not provided a 30-minute break during which they were relieved of all duties, during the period from February 21, 2010 to the present.

- **Recovery Period Subclass**: All Defendants' [sic] non-exempt employees who worked on construction projects in California on any day during which the

---

1. In connection with Hoffman's class certification motion, the parties filed evidentiary objections, [Doc. ## 53, 80], motions to strike [Doc. ## 58, 59], and requests for judicial notice [Doc. ## 57, 82]. The Court overrules the evidentiary objections to the declarations, deposition testimony, and company documents upon which the Court relied. *See Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 504 (E.D.Cal.2014) ("[W]hile the Court shall discuss in detail ... [the] presentation of conflicting evidence, the analysis of the evidence is merely to determine issues related to certification."); *Gonzalez v. Millard Mall Services, Inc.*, 281 F.R.D. 455, 459 (S.D.Cal.2012) (court may consider evidence that could be deemed inadmissible at trial on a class certification mo-

tion). The Court does not address objections relating to facts it did not consider in resolving the motion.

Blattner's motions to strike the employee declarations are **DENIED** because Defendant had the opportunity to depose them. The fact that Defendant was unable to serve the subpoenas upon certain of the declarants does not warrant the striking of their declarations absent evidence that Plaintiff engaged in obstructive conduct. The Court **DENIES** Blattner's motion to strike the expert report as moot—the Court did not rely upon this report to resolve the motion. Similarly, because the Court did not rely on the documents in the parties' requests for judicial notice, those requests are **DENIED**.

temperature exceeded 80 degrees Fahrenheit, during the period from February 21, 2010 to the present.

- **Overtime Subclass:** All Defendants' [sic] non-exempt employees who worked in excess of eight (8) hours in a day or forty (40) hours in a workweek on construction projects in California during the period from February 21, 2010 to the present.

- **Minimum Wage Subclass:** All Defendants' [sic] non-exempt employees who worked on construction projects in California and were not properly paid all minimum wages during the period from February 21, 2010 to the present.

- **Terminated Employee Subclass:** All Defendants' [sic] non-exempt employees who worked on construction projects in California during the period from February 21, 2010, to the present, and who were not properly paid all wages on termination or within 72 hours thereof.

- **Wage Statement Subclass:** All Defendants' [sic] non-exempt employees who worked on construction projects in California and received an itemized wage statement during the period from February 21, 2010 to the present.

- **Reimbursement Subclass:** All Defendants' [sic] non-exempt employees who worked on construction projects in California and were not reimbursed for all necessary work-related expenses during the period from February 21, 2010 to the present.

Notice of Motion for Class Certification ¶ 3. [Doc. # 37.]

Finally, though not specified in his Notice of Motion, Hoffman seeks to certify class claims for violation of California's Unfair Competition Law.

## III.

## LEGAL STANDARD

### A. Substantive Requirements of Rule 23

■ A district court has broad discretion in making a class certification determination under Rule 23. *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir.2001); *see also Reiter v.*

*Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (district courts "have broad power and discretion vested in them by Fed. Rule Civ. Proc. 23"). Nonetheless, a court must exercise its discretion "within the framework of Rule 23." *Navellier*, 262 F.3d at 941.

■ The following prerequisites must be met before a court may certify a class under Rule 23:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal citation and quotation marks omitted).

If the Rule 23(a) requirements are satisfied, a class action may be maintained pursuant to Rule 23(b)(3) if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir.2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). In order to meet the superiority requirement, a class action must be superior to any other methods of resolving the case. Fed. R. Civ. P. 23(b)(3).

## B. Burdens and Standard of Proof

■■■ "The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards*, 798 F.3d 1172 at 1177; *see also Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 321 (C.D.Cal.2015) ("More than a pleading standard, Rule 23 requires the party seeking class certification to affirmatively demonstrate compliance with the rule[.]") (internal citation, ellipsis, and quotation marks omitted). Certification is properly granted only after "a rigorous analysis [determining] that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 131 S.Ct. at 2551. A court ruling on a class certification "is merely to decide a suitable method of adjudicating the case" and "should not turn class certification into a mini-trial on the merits." *Edwards*, 798 F.3d at 1178 (internal citation and quotation marks omitted).

■■■ Neither the Supreme Court nor the Ninth Circuit has definitively set forth a specific standard of proof for Rule 23 determinations. *See Dukes*, 131 S.Ct. at 2551–52 (setting forth a "rigorous analysis" requirement without discussing a specific standard of proof); *Edwards*, 798 F.3d at 1178 (Rule 23 determinations "will inevitably touch upon the merits of plaintiffs' underlying ... claims" but cautioning that a class certification should not become a "mini-trial on the merits") (internal citation and quotation marks omitted). Rather, the Ninth Circuit has stated that, "[w]hile some evaluation of the merits frequently 'cannot be helped' in evaluating [certifiability], that likelihood of overlap with the merits is 'no license to engage in free-ranging merits inquiries at the certification stage.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir.2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, —— U.S. ——, 133 S.Ct. 1184, 1194–95, 185 L.Ed.2d 308 (2013)). "[M]erits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (quoting *Amgen*, 133 S.Ct. at 1194–95) (emphasis in original).

## IV.

## DISCUSSION

Hoffman asserts that the proposed class and subclasses satisfy the elements of Rules 23(a) and 23(b)(3). As threshold matters, the Court examines whether (1) Hoffman has standing to pursue claims on behalf of putative class members in four of the proposed subclasses, and (2) the proper statutory period at issue is February 21, 2010 to the present as Plaintiffs contend or from September 24, 2010 to the present.

### A. Threshold Matters

#### 1. Standing

■■■ "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir.2001)). In addition to satisfying constitutional standing requirements, such a plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). Article III standing to sue requires a plaintiff show an injury-in-fact that is (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010)).

■■■ On a class certification motion, this means plaintiff must show standing "through evidentiary proof." *Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013); *see also Nelsen v. King Cnty.*, 895 F.2d 1248, 1249–50 (9th Cir.1990) ("Standing is a jurisdictional element that must be satisfied prior to class certification."); *In re First Am. Corp. ERISA Litig.*, 2009 U.S. Dist. LEXIS 49141, at *7 (C.D.Cal. Apr. 2, 2009) ("[A]t the class certification stage, ... unlike on a motion to dismiss, the would-be class representative must show standing, rather than merely allege it."); *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.2003) ("if none of the named plaintiffs purporting to

represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

In a complaint involving multiple claims, *at least one named plaintiff* must have Article III standing for each asserted claim. *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F.Supp.3d 1051, 1070 (N.D.Cal.2015) ("[I]n a class action each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (internal quotation marks and citation omitted); *see also* Newberg on Class Actions § 2:5 (5th ed.) ("A finding that no class representative has standing with respect to a given claim requires dismissal of that claim.").

Here, the Court finds that Hoffman does not have standing to raise claims related to two of his proposed subclasses: the on-duty meal period subclass and the recovery period subclass.

### i. On-Duty Meal Period Subclass

Hoffman's proposed on-duty meal period subclass consists of non-exempt employees who signed an agreement with Blattner authorizing an on-duty meal period for construction employees who worked shifts in excess of six hours and who did not receive an off-duty 30-minute meal break under California law.

Generally, California employers are required by law to provide meal periods to employees in accordance with the California Labor Code and applicable Industrial Welfare Commission ("IWC") Wage Orders. Under California Labor Code section 512(a), "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes...."

There is an exception to this "off duty" meal period. According to subdivision 11(A) of IWC Wage Order No. 5, "[u]nless the

employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." Such an " 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1035, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012) (quoting Wage Order No. 5, ¶ 11(A)).

In this case, Hoffman presents no evidence that he ever took an *on-duty* meal break. Indeed, the evidence shows Hoffman recorded *off-duty* meal periods on his time cards. *See, e.g.*, Hoffman Depo. Ex. 3. While Hoffman focuses on the validity of Blattner's on-duty meal break agreement itself, *see* Mot. at 18-21, he provides no evidence as to how that agreement caused him to suffer an injury-in-fact.

Without such evidence, Hoffman has no standing to bring claims on behalf of putative class members who may have taken on-duty meal breaks pursuant to the challenged agreement.

### ii. Recovery Period Subclass

California law requires that employers must not require an employee to work during a meal, rest, or recovery period in accordance with any applicable law. Cal. Lab. Code § 226.7. Recovery period is defined as a "cooldown period afforded an employee to prevent heat illness." *Id.* § 226.7(a). This law became effective on January 1, 2014. *Id.*

Here, Hoffman testified that Blattner neither reprimanded him for cooling down by consuming popsicles or water on the job nor did it ever refuse to give him a recovery period. Hoffman Depo. at 117-18. If anything, Blattner encouraged such methods of cooling down. *Id.* at 118. Nevertheless, Hoffman devotes much discussion to California regulations that require shade when employees work in the heat.[2] Mot. at 5-7. Under

---

**2.** The applicable regulations require outdoor employers to implement various measures to prevent heat illness, including providing employees

with access to drinking water, and training regarding risk factors for heat illness. *See* Cal. Code Regs. tit. 8, § 3395. But for the purposes of

the relevant state labor regulations governing heat-illness prevention in the workplace, outdoor employers like Blattner must provide its employees with access to shade when the temperature exceeds 80 degrees Fahrenheit. Cal. Code Regs. tit. 8, § 3395(d)(1).

The regulations define "shade" as "blockage of direct sunlight." *Id.* § 3395(b). While the section 3395(b) does not provide any more specificity, the examples it gives do suggest that the blockage is sufficient if it "allow[s] the body to cool." *Id.*

Here, Hoffman lacks standing because there is no evidence in the record that Blattner failed to provide *him* with shade. When the Court raised this lack of evidence during the hearing on Plaintiff's motion, Plaintiff's counsel pointed to pages 104 and 109 of Hoffman's deposition. Those pages of Hoffman's deposition, however, say nothing about shade. While Hoffman did testify as to the heat, nothing in his testimony describes Blattner's failure to "maintain one or more areas with shade at all times" accessible to employees. *See id.* § 3395(d)(1)–(3).

Hoffman submits declarations form at least six employees who worked for Blattner in 2014 or later who describe having no access to shade. But these six employees never state whether they worked in the same location (Borrego Springs) and during the same time period (June 2014 to July 2014) as Hoffman. *See* Declaration of Kenneth Kirkland ¶ 2 ("wind project West of Mojave, California" in 2014); Declaration of Adam O'Neal ("O'Neal Decl.") ¶ 2 ("North Skye River project" and "Alta Wind project" from September 2010 to January 2014); Declaration of Kenny Roark ¶ 2 (does not specify work site but states "began working for Blattner in January 2015 and quit in March 2015"); Declaration of Tamera Roark ¶ 2 (Bakersfield, California from February 2015 to May 2015); Declaration of Jimmy Silva ("Silva Decl.") ¶ 2 (Shafter Solar project and Adelanto I & II project from February 2015 to June 2015); Declaration of Manuel Torres ("Torres

Decl.") ¶ 2 (Mojave from April 2012 to December 2012 and again from July 2014 to February 2015). Based on the evidence presented, the Court cannot infer that Hoffman worked with any of these six individuals such that he himself would be able to similarly declare that he worked without any shade.

In sum, Hoffman has not satisfied the standing requirement as to the two aforementioned proposed subclasses. Accordingly, the Court **DENIES** Hoffman's motion to certify the proposed on-duty meal period and recovery period subclasses.

### 2. Applicable Statutory Period

■ Hoffman filed the original complaint in this action on September 24, 2014. [Doc. # 1.] He points out that another plaintiff, Ernesto Ibarra, filed a putative class action in state court against Blattner on February 21, 2014 that asserts the same claims as those in the instant case. [Doc. # 82.][3] According to Hoffman, "the longest statute of limitations in this action under the California Business and Professions Code § 17200 ... is four years, i.e., from February 21, 2010." ("Plaintiff's Supplemental Briefing") [Doc. # 88.] According to Hoffman, under the doctrine of "equitable tolling," the proper statutory period for damages is from February 21, 2010 to the present. *See* Cal. Bus. & Prof. Code § 17208. Blattner disagrees and argues that the applicable period should be from September 24, 2010 to the present. [Doc. # 89.]

■ The Court borrows the rules for equitable tolling from the forum state—in this case, California. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993). Controlling authority in California holds that the first-filed class action tolls the statute of limitations for a related successive class action. *Anderson v. Michaels Stores Inc.*, —— Fed.Appx. ——, ——, 2016 WL 2927604, at *1 (9th Cir. May 19, 2016), citing *Falk v.*

---

this motion, the Court will only discuss the provisions relating to shade—this was the only recovery-period issue raised by Hoffman and fully briefed by the parties. *See id.* § 3395(b), (d).

**3.** The Court **GRANTS** Hoffman's request for judicial notice of a complaint from the San Bernardino Superior Court, entitled *Ernesto Ibarra v. Blattner Energy, Inc.* and that court's order dismissing the case, both of which are on the public docket.

*Children's Hosp. L.A.*, 237 Cal.App.4th 1454, 1470, 188 Cal.Rptr.3d 686 (2015).

Hoffman argues that because the *Ibarra* action tolled the applicable statute of limitations from February 21, 2014 to September 18, 2014, the day on which the state court dismissed *Ibarra*, the four-year damages period should extend back from the time that original action was filed on February 21, 2014. Nearly all of the cases that Hoffman cites in his supplemental briefing on this tolling issue discuss *American Pipe* and involve plaintiffs, who were putative class members of a previously-filed class action lawsuit, seeking to bring subsequent actions involving the same claims after that original lawsuit ceased to be active. The primary issue in those cases was whether the former putative class members to an earlier lawsuit *timely* filed subsequent lawsuits either as individuals or as a class. *See, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 346–47, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) ("The question that confronts us in this case is whether the filing of a class action tolls the applicable statute of limitations, and thus permits all members of the putative class to file individual actions in the event that class certification is denied, provided, of course, that those actions are instituted within the time that remains on the limitations period."); *Catholic Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1145 (9th Cir.2000) ("If the limitations period was tolled [by the earlier action], it is undisputed that the action now before us was also timely filed."). Here, the parties agree that Hoffman's lawsuit is timely and is not time-barred by the previously-filed *Ibarra* lawsuit. Thus, the concept of equitable tolling does not apply.

██ Hoffman cites to no authority that stands for the proposition that the doctrine of equitable tolling allows for a plaintiff in a timely-filed lawsuit to expand the applicable damages period by piggybacking off of another previously-filed similar lawsuit. Hoffman filed this separate class action after the *Ibarra* case was dismissed pursuant to an individual settlement. He did not intervene in *Ibarra* or carry the class action torch for the *Ibarra* putative class. The practical effect of following Hoffman's position is that any time

there are successive putative class actions filed anywhere in the state or country, no matter how long ago, the parties in the later filed action would be able to piggyback on the filing date of the earliest action—even if no class certification motion was ever filed or ruled upon—for the purpose of expanding the damages period. The Court is aware of no case authority supporting this proposition.

Accordingly, the Court **DENIES** Hoffman's request to make February 21, 2010 to the present the applicable statutory period for damages. Instead, the Court will treat the applicable period as September 24, 2010 to the present.

## B. Reimbursement Subclass

Hoffman seeks to certify a subclass of Blattner employees who worked on California projects and were not reimbursed for necessary work-related expenses. But as Blattner points out, Hoffman failed to allege a claim for failure to reimburse business expenses under Cal. Lab. Code § 2802 in the operative FAC. In his Reply, Hoffman requests that the Court certify the proposed reimbursement subclass "on the condition that Plaintiff files an amended complaint to include a claim for failure to reimburse employees for necessary business-related expenses." Reply at 20.

██ Where the date to amend the pleadings has expired, the plaintiff must first satisfy the "good cause" requirement of Fed. R. Civ. P. 16(b)(4) before a court may consider whether an amended pleading under Rule 15 is proper. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–609 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609. "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification.... If that party was not diligent, the inquiry should end.'" *In re W. States Wholesale Natural Gas*, 715 F.3d 716,

737 (9th Cir.2013) (quoting *Johnson*, 975 F.2d at 609).

■ Here, Hoffman fails to meet the "good cause" standard of Rule 16 because he has not shown due diligence. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir.2000) (affirming denial of motion to amend where plaintiffs "failed to show diligence"). The Court set March 20, 2015 as the deadline for amending pleadings and for holding hearings on motions to amend. [Doc. # 18-1.] Hoffman missed that deadline by nearly one year. Hoffman claims Blattner will suffer no prejudice should the Court allow amendment. Yet, he fails to address the issue of diligence in his Reply, and did not bother to file an application seeking leave of court to file a Second Amended Complaint. As Hoffman has not demonstrated due diligence in seeking the amendment, the Court's good cause inquiry ends here.

Hoffman's request to amend the FAC to add an unreimbursed expenses claim is **DENIED**. Accordingly, the Court also **DENIES** Hoffman's motion to certify the proposed reimbursement subclass.

## C. Off-Duty Meal Period Subclass

Hoffman seeks to certify a class of nonexempt construction employees who worked shifts in excess of six hours on California projects and who did not receive 30-minute off-duty meal breaks.

■ As discussed earlier, "[California] law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." *Brinker*, 53 Cal.4th at 1018, 139 Cal.Rptr.3d 315, 273 P.3d 513 (citing Cal. Lab. Code §§ 226.7, 512). Employers satisfy their meal break obligations when they relieve employees of all duties, relinquish control over their activities, permit them a reasonable opportunity to take an uninterrupted 30–minute break, and do not impede or discourage them from doing so. *Id.* at 1040–41, 139 Cal.Rptr.3d 315, 273 P.3d 513. This also means that "[a]n employ-

er cannot contravene an official meal or rest break policy by imposing an informal practice that impedes or discourages its employees from taking compliant breaks." *Campbell v. Vitran Express Inc*, 2015 WL 7176110, at *4 (C.D.Cal. Nov. 12, 2015) (citing *Ricaldai v. U.S. Investigations Servs., LLC*, 878 F.Supp.2d 1038, 1042 (C.D.Cal.2012) (collecting cases finding that employer committed meal period violations when it pressured employees to skip meal periods)).

Hoffman claims that "no written break policy [was ever] given to employees; if any meal break policy exists, employees do not see it." Mot. at 4.[4] There is evidence, however, that Blattner did provide employees with information about meal breaks under California law. For instance, Blattner posted the Division of Labor Standards Enforcement Wage Order, Number 16—which includes information about meal periods—at its job site entry ways. Lemke Decl. ¶ 9. What is more, Blattner presented evidence that it not only has a written policy regarding how off-duty meal breaks work under state law, but that it trains employees on the meal-period policy at new hire orientations or at site orientations. *Id.* ¶ 10, 11, Ex. A (copy of Blattner's meal period policy).

Nevertheless, Hoffman argues that Blattner implemented an unofficial "common policy and practice requiring its employees to eat on-the-go" and discouraging and denying putative class members their off-duty meal breaks. Reply at 15; *see, e.g.*, Deposition of Ronald Russell at 61-62 (stating employees never received a proper meal break and instead had to eat-on-the-go); Deposition of Efren Ramos at 38-40 (testifying that meal period usually lasted between five and ten minutes), 48-49 (told by supervisor that when it comes to meals "You take them as you go along"); Deposition of Eduardo Figueroa at 14-15, 20-23 (told by foreman that he was not allowed to take a meal break). To the extent that there is disputed evidence, the Court does not decide the merits of the claim, but addresses each of the Rule 23 factors in turn.

---

4. Hoffman cites to portions of the Deposition of Sherri Lemke, Blattner's Rule 30(b)(6) witness, for the proposition that Blattner failed to provide employees with information about the company's meal break policy. The Court examined these passages: they do not support the proposition for which Hoffman cited them. *See* Mot. at 14 (citing Lemke Depo. at 30, 132-33, 273-74, 285).

## 1. Rule 23(a)

### a. Numerosity

 A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement imposes no absolute limitations; rather, it "requires examination of the specific facts of each case." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Thus, while the Supreme Court has noted that putative classes of 15 are too small to meet the numerosity requirement, *id.* at 330 & n.14, 100 S.Ct. 1698, district courts in this Circuit have found that classes with as few as 39 members met the numerosity requirement, *see Patrick v. Marshall*, 460 F.Supp. 23, 26 (N.D.Cal.1978); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir.) (noting, in *dicta*, that the court "would be inclined to find the numerosity requirement ... satisfied solely on the basis of [39] ascertained class members"), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). "The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25–30 members." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D.Cal.2000).

 In this case, Hoffman satisfies the numerosity requirement because he has identified at least 23 employees—all of whom have submitted declarations in support of Hoffman's motion—that fall within the proposed subclass. If Hoffman can present the declarations of 23 Blattner employees who state that Blattner denied them meal break periods, it is reasonable for the Court to conclude that there are other employees out of 1,229 who fall within the proposed subclass. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D.Cal.2004), *amended in part*, 2012 WL 3070863 (N.D.Cal. July 26, 2012) (court may make common sense assumptions to make finding of numerosity) (citing Newberg on Class Actions, § 3:3 (4th Ed. 2002) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.")).

Thus, Plaintiffs have satisfied their burden of establishing numerosity.

### b. Commonality

 The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S.Ct. at 2251 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). In determining that a common question of law exists, it is insufficient to find that all putative class members have suffered a violation of the same provision of law. *Id.* Rather, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

 Hoffman has shown common questions of law and fact exist based on Blattner's alleged practice of violating California labor laws relating to meal breaks. Such common questions include: (1) whether Blattner maintained an unofficial policy of impeding and discouraging legally mandated meal breaks, and (2) whether Blattner paid meal break premiums to employees who missed meal breaks. Hoffman has presented evidence showing that putative class members' claims come from the same source: their employment with Blattner during the class period from 2010 to 2015, during which they were subject to the same unofficial policy. The fact that the 23 declarants whom Hoffman presents may have incurred varying damages amounts due to differences in their wages, job titles, or period of employment does not defeat class certification.

### c. Typicality

 Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named

representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon*, 976 F.2d at 508). The typicality standard under Rule 23(a)(3) is "permissive": "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.2003) (quoting *Hanlon*, 150 F.3d at 1020).

■ Hoffman worked for Blattner on California construction projects during the relevant class period, and claims he was denied 30-minute off-duty meal breaks as a result of Blattner's unofficial policy. His allegations are typical of other putative class members who worked at Blattner's construction job sites during the relevant class period.

Thus, Hoffman has satisfied the burden of establishing typicality.

### d. Adequacy

■ Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir.2010) (citing *Hanlon*, 150 F.3d at 1020).

■ In this case, adequacy is satisfied because (1) the Declaration of Hoffman's attorneys, Kenneth H. Yoon, Stephanie E. Yasuda, Marshall R. Lurtz, and Douglas Han, *see* Doc. ## 37-1, 37-2, 37-3, 37-4, demonstrates that experienced and qualified counsel will vigorously prosecute the action, and (2) the record does not reflect any conflicts of interest between Hoffman and the putative members of the class. *See* Mot. at 23; Hoffman Decl. at 2-3.

### 2. Rule 23(b)(3)

When the Rule 23(a) requirements are satisfied, a class action may be maintained pursuant to Rule 23(b)(3) if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir.2015) (quoting *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231). In order to meet the superiority requirement, a class action must be superior to any other methods of resolving the case. Fed. R. Civ. P. 23(b)(3).

### a. Predominance

■ There is substantial overlap between the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance tests, but the Rule 23(b)(3) test is 'far more demanding.' " *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.2010) (quoting *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623, 117 S.Ct. 2231. "[T]he common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir.2014) (internal quotation, brackets and alteration omitted). The "focus is on the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir.2009) (internal quotation marks omitted).

The "predominance" prong is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998)

(quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1777 (2d ed. 1986)). "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker*, 53 Cal.4th at 1033, 139 Cal.Rptr.3d 315, 273 P.3d 513.

Here, Hoffman's theory of liability centers on whether Blattner implemented an unofficial policy of pressuring its employees to refrain from taking meal breaks. Thus, the gravamen of Hoffman's claim is that Blattner implemented a policy to violate its official facially-compliant policy, a theory of liability validated by the Ninth Circuit. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 (9th Cir.2014), *cert. denied*, — U.S. —, 135 S.Ct. 2835 n. 5, 192 L.Ed.2d 886 (2015) (insurance adjusters sought to certify class alleging employer implemented an informal "policy-to-violate-the-policy"). In *Jimenez*, where putative class member-employees alleged the employer had an unofficial policy of discouraging its employees from reporting overtime, the Ninth Circuit affirmed the district court's finding that "the common question of whether [the defendant] had an 'unofficial policy' of denying overtime payments while requiring overtime work predominated over any individualized issues regarding the specific amount of damages a particular class member may be able to prove." *Id.* at 1164. A trial on whether such an informal policy existed would drive the resolution of the overtime issue. *Id.* at 1166. Of course, courts do not grant class certification in every instance where plaintiffs allege an informal policy to violate California wage-and-hour law. *See Flores v. Supervalu, Inc.*, 509 Fed.Appx. 593 (9th Cir.2013) ("The district court correctly found that [the "unofficial policy"] claim required examination of 'a number of human factors and individual idiosyncrasies' having 'little to do with an overarching policy,' and thus failed to satisfy Rule 23(b)(3).").

The court in *Campbell v. Vitran Express Inc*, 2015 WL 7176110 (C.D.Cal. Nov. 12, 2015), found that the distinguishing factor between *Jimenez* and *Flores* "appears to be the amount of evidence presented to support the existence of an unofficial policy. In other words, common issues predominate in those cases where the plaintiff proffers sufficient evidence to demonstrate that an unofficial policy exists and applies uniformly to all class members." *Id.* at *7. In *Campbell*, the court certified plaintiffs' proposed class finding that declarations from 15 employees—out of a putative class of 156 drivers—that the employer implemented and uniformly applied an informal policy to deprive them of meal and rest breaks sufficient evidence to support the policy's existence. *Id.* at 8. As the *Campbell* court points out, it is in good company:

> Courts generally hold that sufficient evidence of an unofficial policy exists where the plaintiff offers multiple declarations from employees attesting to the uniform application of the policy. *Harp v. Starline Tours of Hollywood, Inc.*, No. 2–14–CV07704–CAS–Ex, 2015 WL 4589736, at *6 (C.D.Cal. July 27, 2015) (finding that common issues predominate where plaintiffs offered three declarations from employees testifying that they "were often prevented from taking lunch breaks, but that such breaks were nonetheless automatically deducted from their reported hours"); *Antemate v. Estenson Logistics, LLC*, No. CV 14–5255–DSF RZX, 2015 WL 3822267, at *5 (C.D.Cal. June 15, 2015) (finding that common issues predominate where plaintiffs offered evidence that "proposed class members ... all appear equally subject to ... alleged policies and practices, regardless of the particular facility where they work"); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638 (S.D.Cal. 2010) (finding that common issues predominate where "[t]he majority of Plaintiff's evidence [was] anecdotal, consisting of the declarations of [employees]" and one supervisor stating that "dispatchers did not schedule lunches").

*Campbell*, 2015 WL 7176110, at *7.

In this case, the Court finds that Hoffman has adduced sufficient evidence in the form of his deposition and 26 declarations to support a finding that a common issue—the existence *vel non* of Blattner's over-arching unofficial policy to dissuade employees from taking meal breaks—predominates over indi-

vidualized issues. All of the employee declarations that Hoffman submits declare in unison that Blattner did not permit them to take their meal breaks or pay them meal-period premiums. *See, e.g.,* Hoffman Depo. at 33-39; Declaration of Melissa Laza ("Laza Decl.") ("Blattner failed not only to provide breaks, but it also failed to compensate me for the meal and rest breaks I regularly missed."); Declaration of Robert Haskin ("Haski Decl.") ("Despite being denied my proper meal and rest breaks, I was not paid an additional hour of pay at my hourly rate of pay to compensate me for missed meal and rest breaks."); Declaration of Matt Evans ("Evans Decl.") ¶ 6 ("Blattner failed to provide proper meal and rest breaks"); Declaration of Eduardo Figueroa ¶ 3 ("Although I routinely worked 10 plus hour days, Blattner did not permit breaks during this time."). Some employees describe the need to eat quickly between tasks. *See, e.g.,* Declaration of Peter Bernal ("Bernal Decl.") ("To maintain energy, I stuffed my work vest with peanut butter and honey sandwiches, which I could eat in about three bites."); Declaration of Joshua Kirkland ("Kirkland Decl.") ("I would sneak quick bites to eat atop the windmill when the crane operator was hoisting a new piece to assemble ... on a daily basis."). Based on such evidence, the Court finds that common issues predominate as to whether Blattner maintained an unofficial policy or practice to deprive putative class members of their meal breaks.

In response, Blattner presents the declarations of over two dozen employees who state that Blattner did provide them with uninterrupted, 30-minute meal periods. *See, e.g.,* Declaration of Chris Bullock ¶ 5("I always had the opportunity to take a 30 minute uninterrupted meal break"); Declaration of Jeremiah Bullock ¶ 6 ("I took my lunch break from 12:00 p.m. to 12:30 p.m. No one ever asked me to miss a meal period while I worked at Blattner."). Blattner implies that its evidence of conflicting testimony renders Hoffman's declarants' experiences an individualized issue inappropriate for class-wide proof. Such arguments, however, are better suited for a summary judgment motion or trial, as they go to the merits of Hoffman's claim, and not the issue of whether common

questions predominate. *Jimenez,* 765 F.3d at 1166 n.5 (rejecting argument by employer that "policy-to-violate-the-policy" did not exist because "[w]hether any of these common questions are ultimately resolved in favor of either side is immaterial at this class certification stage, where we determine whether any answer that the questions could produce will drive resolution of the class claims").

Blattner also attacks the credibility of Hoffman's evidence by pointing to supposed contradictions in some of the Plaintiff's declarants' statements that Blattner *never* provided them with meal breaks. *Compare* Silva Decl. ¶ 4 ("I also never received proper meal breaks") *with* Silva Depo. at 49 (testifying he took meal breaks at the same time every day at certain job sites); Torres Decl. ¶ 4 ("Blattner never provided time for meal and rest breaks") *with* Torres Depo. at 36-37 (testifying that foremen told him to take lunch and that he actually did); Declaration of Nels Petersen ¶ 4 ("Petersen Decl.") ("Blattner never permitted breaks) *with* Petersen Depo. at 47 (testifying there were times when he could take a meal break). These contradictions do not undermine the rest of the evidence or the claim that common questions predominate. The fact that "an employee may have actually taken a break or was able to eat food during the work day does not show that individual issues will predominate in the litigation." *Bradley v. Networkers Int'l, LLC,* 211 Cal.App.4th 1129, 1151, 150 Cal.Rptr.3d 268, *as modified on denial of reh'g* (Jan. 8, 2013); *see also Boyd v. Bank of Am. Corp.,* 300 F.R.D. 431, 441 (C.D.Cal. 2014) ("Here, even if the Court accepts [defendant's] assertions that [employees], who worked from home, had time to take breaks and [defendant] never prevented them from taking those breaks, the threshold common question remains: did [defendant] relieve its employees of all duty so that they could take their meal periods and rest breaks?").

■ Blattner also argues that it maintained lawful meal period policies and practices. Such an official policy that, on its face, complies with the law will not insulate employers from multiple allegations by putative class members that a contrary and uniform policy exists in practice. *Brewer v. Gen. Nu-*

*trition Corp.*, 2014 WL 5877695, at \*7 (N.D.Cal. Nov. 12, 2014) ("[E]ven if an employer has a formal policy that is compliant with California law, proof of an informal but common scheduling policy that makes taking breaks extremely difficult, or other informal means of exerting pressure to discourage taking meal and rest breaks, would be sufficient to establish liability to a class."); *Boyd v. Bank of Am. Corp.*, 109 F.Supp.3d 1273, 1306 (C.D.Cal.2015) ("[A] formal policy will not be controlling where it is otherwise shown that an employer pressured or coerced employees to skip breaks.").

Because the Court finds Blattner's counterarguments unavailing and because Hoffman has presented sufficient evidence of an informal policy by Blattner to impede or discourage employees from taking their meal breaks, the Court finds that a common question predominates as to claims related to Hoffman's proposed meal break subclass.

### b. Superiority

The "superiority" prong requires the Court to consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(a)–(d).

The Court finds that class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Nothing in the record suggests that class members have any individual interest in controlling the prosecution or defense of separate actions. No party has pointed out any other litigation concerning this controversy initiated by class members. This forum appears to be desirable to all parties. *See* Doc. # 1 (removal notice). Finally, the class is not unmanageable as the common question of the existence of Blattner's unofficial policy will establish liability as to all class members. While individual damages issues will likely exist, the Court cannot deny class certification on the basis

that it must later calculate individual damages. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir.2013)

Hoffman has satisfied the superiority element of Rule 23(b)(3). Because Hoffman has satisfied the other requirements under Rules 23(a) and 23(b)(3), the Court **GRANTS** Hoffman's motion to certify the meal break subclass for the period from September 24, 2010 to present.

### D. Overtime and Minimum Wage Subclasses

Hoffman seeks to certify an overtime subclass consisting of non-exempt employees who worked in excess of eight hours in a day or 40 hours in a workweek on construction projects in California during the relevant time period. He also seeks to certify a minimum wage subclass of non-exempt employees who worked on California construction projects and were not properly paid all minimum wages during the relevant time period. Certification of these subclasses hinges on whether Hoffman can demonstrate that common questions predominate as to allegedly unpaid off-the-clock work that employees performed before and after their scheduled shifts.

"California law requires that employees be compensated for all time 'during which an employee is subject to the control of an employer,' which includes 'all the time the employee is suffered or permitted to work, whether or not required to do so.' " *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 624 (S.D.Cal.2014), *leave to appeal denied* (Aug. 22, 2014) (quoting *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 585–87, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000)) (citing Cal. Code Regs. tit. 8, § 11040(2)(K) definition of "Hours worked"). " '[T]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative' of whether an activity is compensable." *Novoa v. Charter Communications, LLC*, 100 F.Supp.3d 1013, 1019 (E.D.Cal.2015) (quoting *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 587, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000), *as modified* (May 10, 2000)). "Hours worked" can include work like "unau-

thorized overtime, which the employer has not requested or required [if] ... [t]he employer knows or has reason to believe that [the employee] is continuing to work[.]" *Morillion*, 22 Cal.4th at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139.

Hoffman asserts that time Blattner's non-exempt employees spent performing work before and after their scheduled shifts—required by Blattner "[a]s a matter of common policy and practice"—is compensable as working time under California law. Mot. at 7-10. Hoffman presents 20 employee declarations and his own deposition to support his claim that common questions predominate around this issue of unpaid work time.

According to Hoffman and the declarants, before employees begin their scheduled paid shift at the job site itself, they must first perform certain unpaid duties at a central meeting location known as "the Yard," where the company stores its tools, supplies, and equipment for the construction project. *See* Lemke Depo. at 76-79 (describing the laydown yard). Such duties may typically include loading ice, water, and tools, and readying the equipment needed to perform work at the job site. *See, e.g.*, O'Neal Decl. ¶ 3; Silva Decl. ¶ 3; Petersen Decl. ¶ 5; Declaration of Bradley Whisnant ("Whisnant Decl.") ¶ 5. Blattner required the employees to arrive 30 minutes or more before their shifts as performing these tasks before going to the job site could take anywhere from 15-45 minutes to complete. *See, e.g.*, O'Neal Decl. ¶ 3; Silva Decl. ¶ 3; Petersen Decl. ¶ 5; Whisnant Decl. ¶ 5. Additionally, Blattner required employees who operated heavy equipment to perform specific equipment inspections. *See, e.g.*, Declaration of Melissa Laza ("Laza Decl.") ¶¶ 2, 5 (heavy equipment operator required to run daily equipment inspections); Kirkland Decl. ¶¶ 2, 5 (laborer required to conduct maintenance inspections of equipment). Employees who operated vehicles were required to perform vehicle inspections and fill out a Vehicle Inspection Report. *See, e.g.*, Torres Decl. ¶¶ 2-3 (heavy equipment operator who drove compactors and forklifts required to conduct equipment inspections and complete necessary paperwork); Declaration of William Annis ("Annis Decl.") ¶¶ 2-3 (driver who operated backhoes, loaders, and dozers required to inspect tires, gauges, and hoses for defects); Declaration of Mary Mitchell ("Mitchell Decl.") ¶¶ 2-3 (heavy equipment operator who drove compactors, loaders, and rollers required to inspect tires, fuel lines, and hydraulic lines for faults that could comprise equipment safety).

Similarly, Hoffman and declarants state that Blattner required employees to complete work-related tasks at the Yard, without pay, after they have already finished their paid work at the job site. Such tasks included unloading tools, equipment, and water, cleaning up, and conducting equipment inspections that can take between 15 and 30 minutes to complete. *See, e.g.*, Declaration of Miguel Vasquez ¶ 6; Declaration of Branden Barton ("Barton Decl.") ¶ 6; Annis Decl. ¶ 3; Mitchell Decl. ¶ 3. Some declarants also reported not being paid for the time spent travelling in a company vehicle from the job site back to the yard, which can take between five and 30 minutes. Barton Decl. ¶ 6; Hoffman Depo. at 72, 77, 138-140; Evans Decl. ¶ 5 ("we were unable to drive our personal vehicles to the actual jobsites").

As for Blattner's policy requiring certain employees to conduct daily equipment and vehicle inspections, Hoffman offers further evidence that this was a written policy contained in Blattner's employee handbook. Han Decl. Ex. B at 1-3; Lemke Depo. at 91, 121. The relevant pages of the handbook discuss the "Daily Walk Around Inspections," which requires employees who operate heavy equipment to perform "before and after each shift" a walk-around inspection on all heavy equipment to determine if repairs are required for safe operation. Han Decl. Ex. B at 1. This portion of the handbook is covered at the new hire orientation for all employees, not just operators. Lemke Depo. at 121-22. The handbook distinguishes between the types of equipment that require employees to use the "Daily Equipment Walk Around Inspection Form" (e.g., loaders, compactors) and the types of equipment that require employees to use the "Driver's Vehicle Inspection Report" or the "Daily Crane Inspection Report" (e.g., dump trucks, cranes, blast trucks). Han Decl. Ex. B at 2. The forms require employees to do a thorough inspec-

tion. For instance, the Daily Equipment Walk Around Inspection Form contains 27 different items that employees must inspect before and after each shift (e.g., engine, hydraulics, steering, lights, mirrors, frame, hoist, cutting edge, tracks).

**1. Rule 23(a)**

 With respect to the overtime and minimum wage subclasses, the Court finds that Hoffman satisfies all four elements of Rule 23(a), the requirements of which have already been discussed above. He presents his own deposition and the declarations of 20 employees who attest to performing unpaid work before and after their on-site shifts. Hoffman's claims are typical of the class— they mirror the claims of the putative class members who also performed unpaid work at the Yard. For the reasons discussed in the previous section, the Court finds that adequacy of representation by Plaintiff and Plaintiff's counsel is also satisfied.

 As for commonality, this case presents questions of law and fact common to the putative class. The underlying facts raise common questions that include: (1) whether Blattner had a policy requiring employees to perform work off the clock before and after each shift; (2) whether the time spent loading and unloading, or inspecting equipment at the Yard before and after shifts, is labor within the meaning of the California Labor Code; (3) if so, whether such work should be compensated at overtime rates; and (4) whether Blattner knew or had reason to know that its employees were performing uncompensated work.

**2. Rule 23(b)(3)**

**a. Predominance**

 Hoffman argues that common questions predominate over individual issues. Indeed, Blattner's policy of conducting daily vehicle and equipment inspections was conveyed to all employees in the same manner— as part of an official handbook provided to each employee during his or her orientation. Hoffman also presents evidence that these inspections, in addition to cleaning and unloading equipment at the Yard, regularly occurred off the clock.

Blattner rebuts these employee declarations with the declarations of other employees who claim that they recorded time for all hours worked. *See, e.g.*, Declaration of Daniel Clifton ("Clifton Decl.") ¶ 5 ("I have never been instructed to work and not record my time" and "I have never worked and not recorded my time"); Declaration of Taylor Duncan ("Duncan Decl.") ¶ 6 ("I have not conducted work after clocking out"). These dueling declarations do not preclude a finding that common issues predominate.

Blattner points to the lack of commonality in the declarations over whether certain tasks were performed only before shift, or before and after shift, or whether the employee or the foreman prepared the time records. Opp. at 22. To the extent there are such differences in the declarations, such minor variations do not negate the claim that off-the-clock work took place, or detract from the critical common question: whether Blattner's policy or practice of requiring employees to perform certain tasks at the Yard before and/or after their shifts resulted in employees not being properly compensated.

Next, Blattner argues that its policy complies with California law. It states, for instance, that its vehicle inspection protocol does not require any vehicle inspection to occur off the clock. Opp. at 21 (citing Messiha Decl. ¶ 15, Ex. 21 (Handbook) ("Blattner Energy requires that a walk around inspection be performed before and after each shift on all heavy equipment to determine if any repairs are required for safe operation.")). It also presents evidence in the form of employee declarations that it trained its employees to record and verify all hours worked, and that employees complied with the training. *See, e.g.*, Declaration of Art Vega ¶ 7 ("I knew from orientation training to write down all time worked ... and stop working at the time indicated on my time card."); Declaration of Daniel Cooper ¶ 8 ("I was instructed during training to write down all of my time worked on my time cards and not work off the clock.").

But as discussed in the previous section, a formal policy that facially complies with the law does not immunize an employer from

allegations that a contrary and uniform informal policy or practice exists.

The declarations offered by Hoffman contain largely consistent and virtually identical statements that Blattner did not compensate employees for work performed at the Yard before and after their shifts. These declarations are buttressed by Blattner's own handbook sections discussing daily equipment and vehicle inspections. Therefore, the Court concludes that common issues predominate regarding whether Blattner maintained an unofficial, company-wide policy or practice to deprive class members of minimum and overtime wages.

#### b. Superiority

For the same reasons that Hoffman's meal period claim satisfies the superiority prerequisite, the Court also finds that a class action is superior to individually adjudicating Hoffman's overtime and minimum wage claims.

Accordingly, the Court **GRANTS** Hoffman's motion to certify the proposed overtime and minimum wage subclasses for the period from September 24, 2010 to present.

### E. Wage Statement Subclass

Hoffman next seeks to certify a subclass consisting of non-exempt employees who worked on construction projects in California and received an itemized wage statement during the period from February 21, 2010 to the present. According to Hoffman, Blattner has failed to comply with California labor law by issuing paystubs to employees that inaccurately reflect their gross wages earned, hours worked, and net wages earned. Mot. at 37; *see* Cal. Lab. Code § 226. This subclass necessarily turns on Hoffman's claims that Blattner had a policy or practice of failing to properly compensate employees for meal breaks and work performed before and after their shift.

Because the Court certifies Hoffman's proposed meal break and overtime and minimum wage subclasses, the Court also **GRANTS** Hoffman's motion to certify the proposed wage statement subclass for the period from September 24, 2010 to present.

In his Reply, Hoffman raises for the first time an additional request for relief based on Blattner's failure to issue wage statements that identified the start date of the employee's pay period. Reply at 24. Hoffman contends this violates California Labor Code section 226(a)(6) and constitutes "an easily certifiable issue." *Id.*; *see also McKenzie v. Fed. Express Corp.*, 765 F.Supp.2d 1222, 1229 (C.D.Cal.2011) (holding that defendant "violated Labor Code Section 226(a)(6) by failing to include the beginning date for the pay period in its wage statements"). At the March 11 hearing, Blattner argued that because Hoffman inappropriately raised this new claim in his Reply, it did not have the opportunity to respond to it.

The Court agrees with Blattner. Even without Blattner's objection, the Court would have disregarded *sua sponte* Hoffman's late request for relief because it was raised for the first time in Plaintiff's Reply. *See, e.g., Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir.2012) ("[C]laims not made in an opening brief in a sufficient manner to put the opposing party on notice are deemed waived."). Hoffman responds that its FAC is broad enough to encompass the issue of Blattner's failure to state the inclusive dates for the pay period. Hoffman's class certification motion, however, suggests that Hoffmandid not originally intend to include this claim and that it is merely an afterthought. In the Motion, Hoffman asserts that Blattner "failed to keep accurate records" under California law "[b]ased on the violations stated above," referring to Hoffman's other proposed classes, none of which mention Blattner's failure to identify the pay period start date on the wage statements.

Because nothing in Hoffman's Motion or FAC suggests that the wage statement proposed subclass is anything more than derivative of the other proposed subclasses, the Court finds that Hoffman waived the inclusive-dates claim by raising it for the first time in his Reply and depriving Blattner of proper notice of this claim. As such, the Court **DENIES** Hoffman's certification motion as to the wage-statement subclass to the extent it is premised on Blattner's failure to

include the pay period start dates on its employee wage statements.

### F. Terminated Employees Subclass

Hoffman seeks to certify a subclass consisting of non-exempt employees who worked on construction projects in California during the period from February 21, 2010 to the present. Hoffman contends that Blattner failed to properly pay all wages owed to employees within 72 hours of their termination. Much like the wage statement subclass, the terminated-employee subclass derives from Hoffman's claims that Blattner had a policy or practice of failing to properly compensate employees for meal breaks and work performed before and after their shift.

Because the Court certifies Hoffman's proposed meal break and overtime and minimum wage subclasses, the Court also **GRANTS** Hoffman's motion to certify the proposed terminated-employee subclass for the period from September 24, 2010 to present.

### G. Unfair Competition Law

Finally, Hoffman seeks to certify his class claim for violations of the UCL.

Section 17200 of the California Business and Professions Code prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." A cause of action brought under the "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000). The UCL also creates a claim for a business practice that is "unfair" even if not specifically prohibited by another law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003). Under this prong, the plaintiff must allege facts that the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 719, 113 Cal.

Rptr.2d 399 (2001) (internal quotation marks and citation omitted).

Here, Hoffman's UCL claims stem in part from Blattner's alleged failure to provide meal periods, failure to pay minimum and overtime wages, and failure to provide recovery periods. Mot. at 17-19. Given the Court's certification of these claims for class treatment, the Court **GRANTS** Hoffman's request to certify his UCL claims to the extent they derive from those same allegations for the period from September 24, 2010 to present. *See, supra,* Sections IV.C, IV.D. But to the extent his UCL claim is based on Blattner's failure to provide recovery periods, Hoffman's motion is **DENIED**. Specifically, Hoffman's claim that Blattner's failure to provide shade is an "unfair" business practice is denied for failure to demonstrate standing. *See, supra,* Section IV.A.

## V.

### CONCLUSION

In light of the foregoing, Plaintiff's Motion for Class Certification is **GRANTED in part** and **DENIED in part** as follows:

1. The Court certifies the following class and subclasses:

 - **Overall Class:** All current and former non-exempt employees of Defendant who worked on construction projects in California and were paid on an hourly basis from September 24, 2010 to the present.

 - **Meal Period Subclass:** Defendant's non-exempt employees who worked one or more shifts in excess of six (6) hours on construction projects in California and were not provided a 30-minute break during which they were relieved of all duties, during the period from September 24, 2010 to the present.

 - **Overtime Subclass:** Defendant's non-exempt employees who worked in excess of eight (8) hours in a day or forty (40) hours in a workweek on construction projects in California during the period from September 24, 2010 to the present.

- **Minimum Wage Subclass:** Defendant's non-exempt employees who worked on construction projects in California and were not properly paid all minimum wages during the period from September 24, 2010 to the present.

- **Wage Statement Subclass:** Defendant's non-exempt employees who worked on construction projects in California and received an itemized wage statement during the period from September 24, 2010 to the present.

- **Terminated Employee Subclass:** Defendants' non-exempt employees who worked on construction projects in California during the period from September 24, 2010 to the present, and who were not properly paid all wages upon termination or within 72 hours thereof.

2. The Court declines to certify the on-duty meal period, recovery period, and reimbursement subclasses.

3. The Court certifies Hoffman's UCL class claim under the "unlawful" prong to the extent it is derived from the claims that Blattner failed to provide meal periods or pay all minimum and overtime wages.

4. The Court declines to certify Hoffman's UCL class claim to the extent it is based on the "unfair" practice of failing to provide shade to employees.

**IT IS SO ORDERED.**